IN RE: BARBARA BURRUS (69-J-17); SARAH WHITNEY (69-J-18); DARLENE McCOY (69-J-19); NINA WHITNEY (69-J-20); DORENE HARRIS (69-J-21); PATRICIA COLLINS (69-J-22); DOLLIE GIBBS (69-J-23); MARIA HARRIS (69-J-24); TRINA SELBY (69-J-1); DORENE HARRIS (69-J-3); JULIA ANNA COLLINS (69-J-4); CHERLYN WHITNEY (69-J-5); CATHERINE GIBBS (69-J-6); DEBORAH ANN COLLINS (69-J-8); MARIA HARRIS (69-J-9); EDDIE WHITLEY (69-J-10); ALONZO EDWARD HOLLOWAY (69-J-30); EVELYN EVANGELINE GIBBS (69-J-11); ROSE MARY COLLINS (69-J-12); DEBRA ANN COLLINS (69-J-13); CATHERINE GIBBS (69-J-14); JULIE ANNA COLLINS (69-J-16); ELVIRA VASHTI WESTON (69-J-28); SUDIE BELL McCULLOR (69-J-29); BARBARA BURRUS (68-J-4) WILLIAM BLOUNT (68-J-5); NEKOLA GREEN (68-J-6); SHARON HARRIS (68-J-7); SARAH ANNETTE WHITNEY (68-J-8); WALTER ANTHONY GREEN (68-J-9); DESSIE HARRIS (68-J-10); EVELYN GIBBS (68-J-11); RONNIE LEE TOPPING (68-J-12); TYRONE DUDLEY (68-J-13); THERESA BLOUNT (68-J-14); LINDA SUE GIBBS (68-J-15); PATRICIA COLLINS (69-J-27); DONALD WHITE (69-J-25); WILMA JOYCE WHITAKER (69-J-26); JAMES LAMBERTH HOWARD (68-J-3); ROSE MARY WHITNEY (69-J-15); CHERLYN D. WHITNEY (69-J-2); TRINA SELBY (69-J-7); ALONZO EDWARD HOLLOWAY (69-J-31)

No. 692DC256

(Filed 28 May 1969)

**1. Appeal and Error § 41; Criminal Law § 159— record on appeal — cases consolidated for hearing — separate appeals**

Where 44 cases were divided into 9 separate groupings and consolidations for hearing in the juvenile court, it is error to lump the 44 cases together into one record upon appeal to the Court of Appeals, and the appeals are subject to dismissal for failure to present a proper record. Court of Appeals Rule No. 48.

**2. Constitutional Law § 29; Courts § 15; Infants § 10— juvenile hearings — jury trial**

A jury trial is not required in a juvenile court proceeding by either the United States Constitution or the North Carolina Constitution.

**8. Constitutional Law § 30; Courts § 15; Infants § 10— juvenile hearing — exclusion of general public**

Constitutional rights of juveniles are not violated by the exclusion of the general public from the juvenile court hearing as authorized by G.S. 110-24, a public trial not being required in a juvenile court proceeding.

**4. Courts § 15; Infants § 10— Juvenile Courts Act — constitutionality**

The North Carolina Juvenile Courts Act, G.S. Ch. 110, Art. 2, is not unconstitutional for vagueness and uncertainty.

**5. Appeal and Error § 19; Criminal Law § 152— appeal in forma pauperis from juvenile court**

In this juvenile court proceeding, it was not error for the juvenile court, upon request by counsel that the juveniles be allowed to appeal *in forma*

*pauperis,* to suggest to counsel that the statutory procedure pertaining to an appeal *in forma pauperis* be complied with, and failure of the court to allow the appeals *in forma pauperis* is not error where the statutory procedure for such appeals was not followed.

APPEALS from *Ward, J.,* Juvenile Session, 9 January 1969, HYDE County District Court.

Each of these forty-four cases arose out of separate petitions charging each juvenile with various wilful and unlawful acts committed in Hyde County on different dates and different occasions. The petitions requested that the district court, sitting as the juvenile court, hear and determine each case and "if need be found, to give said child such oversight and control as will promote the welfare of such child and the best interest of the State."

In some instances, more than one petition was filed charging the same juvenile with different wilful and unlawful acts committed on different dates and different occasions.

In general, these juveniles, who were under the age of sixteen, placed themselves upon the main public thoroughfares in the county seat of Hyde County for the purpose of blocking and stopping vehicular traffic on said thoroughfares. On other occasions, they disturbed the public schools and defaced and destroyed school property.

The petitions set out in particular the accusations against each juvenile, a typical charge being as follows:

" 'That the facts and circumstances supporting this Petition for Court action as follows:

That at and in the County named above on or about Dec. 6, 1968 the defendant above named did intentionally, unlawfully and willfully stand upon the traveled part or portion of a State highway and street passing through and traversing the community of Swan Quarter and did willfully, intentionally and unlawfully stand upon that portion of said highway and street used by the traveling public in the operation of automobiles, trucks and other motor vehicles in such a way and manner as to cause said motor vehicles being operated upon the traveled portion of said street and highway to stop and cease their traveling or operation and in some cases caused said motor vehicles and the operators of same to be detained, stop and cease operation and to force same, in some cases, to seek detours or other methods of traveling, all in such a way and manner as to obstruct, hinder, impair and stop the progress of said motor vehicles and their operators and to impede the regular flow and

normal traffic of said motor vehicles and their operators upon said highway and street, contrary to the statute in such cases made and provided, the same being Section 20-174.1 of the General Statutes of North Carolina, and against the peace and dignity of the State.'"

Pursuant to these forty-four separate petitions, forty-four juvenile summonses were issued, one for each child and the parents or other person having custody of the child to appear before the judge of the juvenile court for a hearing on the petition alleging delinquency. Different days for the various hearings were set and the place for the hearings was specified.

The same counsel appeared in all forty-four cases for the juveniles.

Upon motion of counsel for the juveniles, these forty-four cases were divided into nine groupings, with each grouping containing from one to thirteen cases.

At the time and place appointed, District Court Judge Ward conducted a hearing, at the commencement of which he ordered the general public excluded from the hearing room. He stated that he was going to conduct a juvenile hearing, not a criminal trial, and that no child would be found to have committed a crime. He thereupon ordered the general public excluded from the hearing room and stated that only officers of the court, the juveniles, their parents or guardians, their attorney and witnesses would be present for the hearing. Judge Ward further stated that only the juvenile cases would be heard and that no other court business would be conducted. He then stated:

"All records may be withheld from indiscriminate public inspection in the discretion of the Court but such record shall be open to inspection by the parents, guardians or other authorized representatives of the child concerned. No adjudication shall operate as a disqualification of any child for any public office and no child shall be denominated a criminal by reason of such adjudication nor shall any such adjudication be denominated a conviction. Our Supreme Court has stated that the express intention of this statute is that in all proceedings under its provisions the Court shall proceed upon the theory that a child under its jurisdiction is the ward of the State and is subject to the discipline and entitled to the protection which the Court should give such child under the circumstances disclosed in the case. Moreover, any Order of Judgment made by the Court in the case of any child should be subject to such modification from

time to time as the Court may consider to be for the welfare of the child. In other words and to summarize, this is not a criminal case but is a hearing to determine whether these children or any of them are delinquent and in need of the protection and guidance of the State."

In each instance, counsel for the juveniles requested a jury trial, but the requests were denied.

At the conclusion of the various hearings, judgments were entered, a typical judgment being as follows:

"This matter, coming on to be heard, and being heard at this regularly calendared session of Juvenile Court for the County of Hyde convened this 9th day of January, 1969; and the Court having determined that said child is under sixteen (16) years of age and is a resident of Hyde County, N. C.; and the Court having heretofore explained to the child and to Pencie Collins, her mother, the nature of this proceeding; as will appear in the minutes; and said child being represented by James E. Furgerson, II, Esq., Attorney of record; and it having been agreed to by the said James E. Furgerson, II, and Hon. Herbert Small, Solicitor for this the First Solicitorial District, that this matter should be consolidated with 69-J-11; 69-J-12; 69-J-14; 69-J-16; 69-J-28; 69-J-29, for hearing, findings and disposition and said attorneys having further agreed that such consolidation is in no way prejudicial to said child and does not violate the spirit or intent of Article 2, Chapter 110 of the General Statutes of North Carolina; and it appearing to the Court, and the Court finding as a fact, that on or about the 13th day of November, 1968, the said child did in the company of others go upon the traveled portion of a main highway in Swan Quarter, N. C., and did block and impede traffic, and after being removed from said traveled portion of said highway, did return and block and impede traffic — all said acts having been wilfully and intentionally done and designed to impede traffic, and that said acts constitute a violation of G.S. 20-174.1, an act for which an adult may be punished by law; and it further appearing to the Court and the Court being satisfied and finding as a fact that the said child is in need of the care, protection and discipline of the State, and is in need of more suitable guardianship and is delinquent; It is now, therefore, ORDERED, ADJUDGED and DECREED that Debra Ann Collins be, and she is hereby committed to the custody of the Hyde County Department of Public Welfare to be placed by said department in a suitable institution maintained by the

State for the care of delinquents (as said institutions are enumerated in G.S. 134-91), after having first received notice from the superintendent of said institution that such person can be received, and held by said institution for no definite term but until such time as the Board of Juvenile Correction or the Superintendent of said institution may determine, not inconsistent with the laws of this State; this commitment is suspended and said child placed upon probation for 12 months, under these special conditions of probation;

1. That said child violate none of the laws of North Carolina for 12 months;

2. That said child report to the Director of the Hyde County Public Welfare Department, or his designated agent, at least once each month at a time and place designated by said Director;

3. That said child be at her residence by 11:00 o'clock P.M. each evening.

4. That said child attend some school, public or private, or some institution offering training approved by the Hyde County Director of Public Welfare.

This matter is retained pending further order of the Court.

This 9th day of January, 1969.

/s/ Hallett S. Ward"

From the entry of the judgments in the forty-four cases, each juvenile appealed to this Court.

*Attorney General Robert Morgan and Deputy Attorney General Ralph Moody for the State.*

*James E. Ferguson, II, for defendant appellants.*

CAMPBELL, J.

[1] Despite the nine separate groupings and consolidations of cases in the juvenile court, the juveniles, in utter disregard of the Rules of Practice in the Court of Appeals or in any appellate court, lumped the forty-four cases together into one record which was filed with this Court. It would be entirely proper to dismiss these appeals for failure to present a proper record. Rule 48 of the Rules of Practice in the Court of Appeals. However, we have nevertheless undertaken to review and to dispose of the cases.

All of the cases stem from what may be classified as a concerted demonstration by Negroes of Hyde County to assert their defiance of law and order and to disrupt the normal economic and social life of Hyde County by a wilful, intentional and flagrant disregard and violation of laws duly enacted by the governing bodies of the State for the public welfare and orderly conduct of human affairs for all citizens of the State.

The forty-four cases have certain common features which may be considered in an effort to determine the legal questions presented. Counsel for the juveniles, both at the time of oral argument and later in writing, stated that all exceptions were withdrawn and abandoned, except for the four legal questions which are common to each case. In view of this withdrawal and abandonment, this Court agreed to hear and decide these questions, despite the failure to comply with proper appellate procedure as above stated.

The four questions are: 1. Is a jury trial required in a juvenile court proceeding? 2. Is a public trial required in a juvenile court proceeding? 3. Is the North Carolina Juvenile Courts Act unconstitutional because of vagueness? 4. Did the juvenile court commit error by preventing an appeal *in forma pauperis?*

[2]    The first question presented for determination is whether a jury trial is required in a juvenile court proceeding. In support of their argument that a jury trial is required, the juveniles rely upon *Re Whittington,* 391 U.S. 341, 20 L. Ed. 2d 625, 88 S. Ct. 1507; *Duncan v. Louisiana,* 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444; *Re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.

While *Duncan* involved the right to a jury trial, it did not involve juveniles or a juvenile court proceeding. Therefore, the case may be dismissed from further consideration. *Whittington* did not make any judicial determination and it merely referred the matter back to the Ohio Court for consideration in light of *Gault.* Therefore, the only authority to substantiate their argument is *Gault,* which considered in some depth juvenile court proceedings. In reviewing the history of such proceedings in the light of whether they complied with due process of law, the United States Supreme Court stated:

> "It is claimed that juveniles obtained benefits from the special procedures applicable to them which more than offset the disadvantages of denial of the substance of normal due process. As we shall discuss, the observance of due process standards, intelligently and not ruthlessly administered, will not compel

the States to abandon or displace any of the substantive benefits of the juvenile process. But it is important, we think, that the claimed benefits of the juvenile process should be candidly appraised. . . .

. . .

. . . We do not mean by this to denigrate the juvenile court process or to suggest that there are not aspects of the juvenile system relating to offenders which are valuable. But the features of the juvenile system which its proponents have asserted are of unique benefit will not be impaired by constitutional domestication. For example, the commendable principles relating to the processing and treatment of juveniles separately from adults are in no way involved or affected by the procedural issues under discussion. Further, we are told that one of the important benefits of the special juvenile court procedures is that they avoid classifying the juvenile as a 'criminal'. The juvenile offender is now classed as a 'delinquent'. There is, of course, no reason why this should not continue. It is disconcerting, however, that this term has come to involve only slightly less stigma than the term 'criminal' applied to adults. It is also emphasized that in practically all jurisdictions, statutes provide that an adjudication of the child as a delinquent shall not operate as a civil disability or disqualify him for civil service appointment. There is no reason why the application of due process requirements should interfere with such provisions."

The United States Supreme Court went on to point out that juvenile hearings must measure up to the essentials of due process and fair treatment. In so holding it was stated that such hearings need not conform to all of the requirements of a criminal trial or even of the usual administrative hearing. However, certain requirements must be followed in order to measure up to the essentials of due process and fair treatment. Proper notice must be given to both the juvenile and his parents, that is "(n)otice which would be deemed constitutionally adequate in a civil or criminal proceeding." Likewise, the United States Supreme Court held that a juvenile was entitled to counsel and "(t)he child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." It was then held that the rights of confrontation and cross-examination and the privilege against self-incrimination must be observed in a juvenile court proceeding.

The United States Supreme Court stated:

> "We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique. . . ."

The United States Supreme Court further stated:

> ". . . a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements."

*Gault* was not decided by a unanimous court. There were two concurring opinions and one dissenting opinion. Another opinion concurred in part and dissented in part.

There is certainly nothing in *Gault* to support the argument that a jury trial is required in juvenile court proceedings. On the contrary, the decision clearly shows that juvenile court proceedings are not to be considered as criminal cases and they are not to be held to the requirements of a criminal case. Juvenile court proceedings are to continue as distinct and separate proceedings. While the essentials of due process and fair treatment are to be maintained, this does not by any means require a jury trial. In the instant case, all of the hearings conducted by Judge Ward measured up to the essentials of due process and fair treatment, as those terms were used and applied in *Gault*.

In *Commonwealth v. Johnson*, 211 Pa. Super. 62, 234 A. 2d 9, the Pennsylvania Superior Court reviewed the *Gault* decision and rejected the position that a jury trial must be afforded in a juvenile court proceeding. It was stated:

> "The National Crime Commission Report, supra, to which the Supreme Court frequently referred in *Gault*, contains the following significant statement: 'Most States do not provide jury trial for juveniles. Even Illinois, New York, and California, which have recently revised their juvenile court laws to increase procedural safeguards for the child, have not extended the right to trial by jury. There is much to support the implicit judgment by these States that trial by jury is not crucial to a system of juvenile justice. As THIS REPORT HAS SUGGESTED, THE STANDARD SHOULD BE WHAT ELEMENTS OF PROCEDURAL PROTEC-

TION ARE ESSENTIAL FOR ACHIEVING JUSTICE FOR THE CHILD WITHOUT UNDULY IMPAIRING THE JUVENILE COURT'S DISTINCTIVE VALUES. (Emphasis added).

'As has been observed, "A jury trial would inevitably bring a good deal more formality to the juvenile court without giving the youngster a demonstrably better fact-finding process than trial before a judge."'

In summary, we are in full agreement with the holding of the Supreme Court that the constitutional safeguards of the Fourteenth Amendment guaranteed to adults must similarly be accorded juveniles. It is inconceivable to us, however, that our highest Court attempted, through *Gault,* to undermine the basic philosophy, idealism and purposes of the juvenile court. We believe that the Supreme Court did not lose sight of the humane and beneficial elements of the juvenile court system; it did not ignore the need for each judge to determine the action appropriate in each individual case; it did not intend to convert the juvenile court into a criminal court for young people. Rather, we find that the Supreme Court recognized that juvenile courts, while acting within the constitutional guarantees of due process, must, nonetheless, retain their flexible procedures and techniques. The institution of jury trial in juvenile court, while not materially contributing to the fact-finding function of the court, would seriously limit the court's ability to function in this unique manner, and would result in a sterile procedure which could not vary to meet the needs of delinquent children. Accordingly, we reject appellant's request for a jury trial."

[2]     In passing on this specific question, the North Carolina Supreme Court has held that the constitutional guarantee of a right to trial by jury does not apply in juvenile court proceedings. *State v. Frazier,* 254 N.C. 226, 118 S.E. 2d 556. Therefore, it follows that, since neither the Constitution of the United States as interpreted by the United States Supreme Court nor the Constitution of North Carolina as interpreted by the North Carolina Supreme Court requires a jury trial in a juvenile court proceeding, the first question is answered in the negative.

[3]     The second question presented for determination is whether a public trial is required in a juvenile court proceeding. As previously pointed out, Judge Ward ordered the general public excluded from the hearing room and stated that only officers of the court, the juveniles, their parents or guardians, their attorney and witnesses would be present for the hearing. He then announced that only the

juvenile cases would be heard and that no other court business would be conducted. This was in keeping with the provisions of the North Carolina Juvenile Courts Act.

Counsel for the juveniles has furnished no authority to support a holding that G.S. 110-24 is unconstitutional in that it provides for the exclusion of the general public from a juvenile hearing. The provision is certainly not unfair or lacking in due process. The objectives of the North Carolina Juvenile Courts Act are to provide measures of guidance and rehabilitation for the child and to provide protection for society. It does not seek to fix criminal responsibility, guilt and punishment. The exclusion of the general public from such a hearing is deemed to be beneficial for the rehabilitation of the child involved. In the instant case, it is true that such a provision thwarted the hopes and desires of those instigating and promoting these unfortunate children in their public demonstrations. The deprivation of a public forum to further their misguided and antisocial conduct does not make it wrong or illegal in a constitutional sense.

**[3]**   A public trial is not required in a juvenile court proceeding. Therefore, the second question is answered in the negative.

**[4]**   The third question presented for determination is whether the North Carolina Juvenile Courts Act is unconstitutional because of vagueness. Art. 2 of Chap. 110 of the General Statutes of North Carolina provides for juvenile courts and for the procedure therein. Exclusive original jurisdiction of a child less than sixteen years of age is provided for as follows:

> "(1)   Who is delinquent or who violates any municipal or State law or ordinance or who is truant, unruly, wayward, or misdirected, or who is disobedient to parents or beyond their control, or who is in danger of becoming so; or
>
> (2)   Who is neglected, or who engages in any occupation, calling, or exhibition, or is found in any place where a child is forbidden by law to be and for permitting which an adult may be punished by law, or who is in such condition or surroundings or is under such improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of such child; or
>
> (3)   Who is dependent upon public support or who is destitute, homeless, or abandoned, or whose custody is subject to controversy.
>
> When jurisdiction has been obtained in the case of any

child, unless a court order shall be issued to the contrary, or unless the child be committed to an institution supported and controlled by the State, it shall continue for the purposes of this article during the minority of the child. The duty shall be constant upon the court to give each child subject to its jurisdiction such oversight and control in the premises as will conduce to the welfare of such child and to the best interest of the State."

The juveniles assert that the statute is void because of vagueness and uncertainty and because it requires one to guess as to its meaning. This same contention was made in *State v. Wiggins*, 272 N.C. 147, 158 S.E. 2d 37, with regard to another statute. The North Carolina Supreme Court stated:

"It is elementary that in the construction of a statute words ought to be given their plain and ordinary meaning unless the context, or the history of the statute, requires otherwise. . . ."

The words in Art. 2 of Chap. 110 have well-defined meanings and have been construed time and time again in decisions dealing with juvenile courts. The provisions of this article have been upheld by the North Carolina Supreme Court.

[4] Suffice it to say that the North Carolina Juvenile Courts Act is not unconstitutional because of any vagueness. *Winner v. Brice*, 212 N.C. 294, 193 S.E. 400. Therefore, the third question is answered in the negative.

[5] The fourth question presented for determination is whether the juvenile court committed error by preventing an appeal *in forma pauperis*. The record in the instant case reveals the following:

"COURT: Do you wish to note any appeal?

MR. FERGUSON: Yes, and I would like 60 days in which to prepare the case on appeal.

COURT: I am afraid that this is too much time, too much time under the rules.

MR. FERGUSON: I would also like to be allowed to proceed in forma pauperis.

COURT: I am afraid that I cannot allow that simply upon your request. We should examine the statutes, however; I am willing, if I can, to allow you to proceed without an appeal bond. EXCEPTION No. 16.

MR. FERGUSON: You might permit me to have the parents sworn and treat the testimony as an affidavit.

COURT: I am afraid that I cannot do that. EXCEPTION No. 17. I am going to suggest that you dictate your own appeal entries in whatever fashion you deem appropriate and I will sign whatever you dictate."

As the above excerpt reveals, even after Judge Ward suggested to counsel for the juveniles that the statutes be examined in order to comply with the statutory procedure for an appeal *in forma pauperis*, counsel failed to look at said statutes and did not in any way comply with the procedure provided by law for an appeal *in forma pauperis*.

It was not error for Judge Ward to suggest to counsel for the juveniles that the statutory procedure pertaining to an appeal *in forma pauperis* be complied with. Since such procedure was not complied with by the juveniles, no error was committed. Therefore, the fourth question is answered in the negative.

There being no error in the trial of these cases in the juvenile court, the various judgments in the forty-four cases are

Affirmed.

We concur

MALLARD, C.J. and MORRIS, J.