STATE OF NORTH CAROLINA v. MARVIN RAY SPARROW, KATHERINE
TAFT SPARROW AND BRITTON OXIDINE, JR.

No. 6926SC504

(Filed 31 December 1969)

**1. Criminal Law § 138—    appeal from district court to superior court — increased sentence**

In cases involving petty misdemeanors which are appealed from the district court to the superior court, where trial *de novo* is had, imposition of a more severe sentence by the superior court judge than that imposed by the district court judge does not violate defendant's right to due process or rights secured by the Sixth Amendment to the U. S. Constitution.

**2. Courts § 15;   Infants §§ 7, 10—    jurisdiction of juvenile courts — contributing to delinquency of minor — constitutionality of statutes**

Provisions of [former] G.S. 110-21 defining the jurisdiction of juvenile courts and provisions of [former] G.S. 110-39, now G.S. 14-316.1, making it a misdemeanor to contribute to the delinquency of a minor *are held* not unconstitutional for vagueness.

**3. Infants § 7—    contributing to delinquency of minor — sufficiency of warrant**

Warrants are sufficient to charge defendants with contributing to the delinquency of a minor in violation of [former] G.S. 110-39, now G.S. 14-316.1, where they allege that defendants harbored and provided lodging for a fourteen year old female and wilfully concealed her from officers knowing they had petitions for her arrest for delinquency, runaway and truancy.

**4. Criminal Law § 98—    sequestration of witnesses — discretion of court**

The sequestration of witnesses during a trial rests solely in the discretion of the trial judge, and the exercise of his discretion is not reviewable on appeal except where there has been an abuse of discretion.

**5. Criminal Law § 98—    failure to allow motion to sequester witnesses**

In this prosecution of defendants for contributing to the delinquency of a minor and for interfering with an officer, the trial court did not abuse its discretion in denying defendants' motion to sequester the State's witnesses, defendants having exercised their right thoroughly to cross-examine the State's witnesses.

**6. Criminal Law § 84—    legality of officers' entry into house occupied by defendants — invitation — juvenile summons**

In this prosecution for interfering with an officer in the performance of his duties, the entry by law officers into the house occupied by defendants was lawful and evidence obtained as a result of the entry was properly admitted, where law officers knocked on the front door and were told to "come in" by an occupant of the house, and the officers had in their possession a "juvenile summons" issued by the district court to be served on a minor who was in the house.

**7. Criminal Law § 169— exclusion of evidence — record fails to show what evidence would have been**

Action of the trial court in sustaining the State's objections to questions asked by defense counsel in his cross-examination of several State's witnesses will not be held prejudicial error where the record does not disclose what the replies of the witnesses would have been had they been permitted to answer.

**8. Criminal Law §§ 33, 162— striking unresponsive and irrelevant testimony — police harassment**

In this prosecution for contributing to the delinquency of a minor and for interfering with an officer, the trial court did not err in striking testimony by one defendant, in response to a question by defense counsel as to what occurred immediately prior to the arrival of police officers, that "we were talking about the police harassment we had been having," such testimony not being responsive to the question or relevant to the issues.

**9. Criminal Law §§ 99, 165, 170— admonishment of defendant by court — G.S. 1-180**

In this prosecution for contributing to the delinquency of a minor and for interfering with an officer, the trial court did not comment on the weight of the evidence in violation of G.S. 1-180 when, after one defendant had stated on cross-examination that a police officer had lied in his testimony, the court directed defendant to refrain from such characterization, and upon defendant's reply of "I'm sorry, he asked me," the court further stated, "You heard me, too, didn't you?"

**10. Infants § 7— contributing to delinquency of minor — concealing minor from police — sufficiency of evidence**

In this prosecution of three defendants for contributing to the delinquency of a minor female by wilfully concealing her from officers with knowledge that the officers had a petition for her arrest as a runaway and a truant, the State's evidence against two of the defendants was insufficient to be submitted to the jury where it tended to show that the two defendants rented a house which they ran in a "communal" fashion, and that the minor spent several days and one night in the house, but there was no evidence that the two defendants knew the minor was staying the house or that the police had a petition for her arrest; the State's evidence against the third defendant was sufficient to be submitted to the jury where it tended to show that he knew the police had a petition to take the minor into custody as a runaway and a truant, that he knew she was, in fact, truant from home and school and that she was under sixteen years of age, and that when officers went to the "communal" house where defendant was staying to look for the minor, defendant took her from the house in a deliberate attempt to keep the officers from serving the petition on her.

**11. Arrest and Bail § 6— interfering with police officer — sufficiency of evidence**

In this prosecution of defendants, husband and wife, for interfering with an officer, the State's evidence *is held* sufficient for the jury where it tends to show that when an officer attempted to take a minor into custody

under a juvenile summons issued by the district court, defendant husband pushed the officer and tried to prevent him from getting to the minor, and that when the husband was arrested for interfering with an officer, his wife tried to pull him away from the officer, and when this failed she resorted to kicking the officer as he went out the door.

**12. Criminal Law §§ 102, 165— motion to record solicitor's argument to jury**

The trial court did not err in the denial of defendants' motion, made after defense counsel had argued to the jury, to have the court reporter record the solicitor's closing argument to the jury, since no statute or rule requires that argument of counsel be recorded, and defendant could have called any allegedly improper argument to the attention of the trial court during the trial or could have included any such remarks in the record on appeal.

**13. Criminal Law § 154— record on appeal — arguments of counsel**

It is not required that the arguments of counsel be included in the record on appeal. Court of Appeals Rule 19(a).

**14. Criminal Law §§ 102, 165, 170— improper argument by counsel — duty of court**

When an attorney makes improper argument to the jury, it is the duty of the presiding judge to correct the transgression upon objection by the opposing party or ex mero motu, and where there were no objections by the opposing party and the trial court found no impropriety, it will be assumed there was no improper argument.

APPEAL by defendants from *Mintz, J.,* at the 3rd week of the May 12, 1969, Schedule "A" Regular Criminal Session of MECKLEN-BURG Superior Court.

The evidence at the trial in the Superior Court of Mecklenburg County tended to establish the following facts: The defendants, Marvin and Kathy Sparrow, rented a house at 1200 Central Avenue in the City of Charlotte and ran the house in a "communal" fashion — in a family situation — allowing various persons to reside there either on a permanent basis or as temporary guests. All persons staying in the house as permanent residents contributed to the payment of the rent and the purchase of food to be shared by all. In order to stay in the house overnight it was necessary for a person to get the permission of five residents of the house, the only restriction being that the person had to be over sixteen years of age; however, there was evidence that persons under sixteen had been allowed to stay overnight. Persons desirous of staying overnight were asked to produce identification to prove their age but the Sparrows did not insist that such identification be produced. The Sparrows testified that they policed the house and kept it clean, but the tes-

timony of the police officers who arrested the Sparrows and Oxidine was that the house was filthy and that the mattresses, which were the principal articles of furniture in the house, were dirty and looked as if someone had urinated on them.

On Thursday, 1 May 1969, Karen Torpey, a fifteen-year-old girl, did not return to her home from school at her regular time. After several unsuccessful attempts to locate her, Mrs. Torpey went to the Charlotte Police Department and reported that Karen was missing. On Friday, 2 May 1969, Mrs. Torpey went to the house at 1200 Central Avenue, where she talked to the Sparrows and Oxidine, telling them that she believed Karen to be with them and that Karen was only fifteen years of age. Oxidine told Mrs. Torpey that Karen had been there but that when she saw her mother coming she ran out the back door. On Monday, 5 May 1969, Mrs. Torpey went to the Mecklenburg County Juvenile Court and filed a petition stating that her daughter was uncontrollable, that she was away from home without her permission and requested that they take her into their custody.

Karen Torpey testified that she had been truant from school for several days prior to 1 May 1969 and that on the occasions when she had been truant she had spent most of her time at the house at 1200 Central Avenue. Each day prior to 1 May 1969, she returned to her home at her usual time; however, on this day she did not return home but instead stayed in the Sparrow house. Karen testified that she obtained permission from five people to stay in the house on Thursday night, but she did not see the Sparrows between Thursday afternoon and Monday afternoon nor did she ask them for permission to spend the night in their house. On Friday, 2 May 1969, she and Oxidine, along with several other persons from the house, went to Chapel Hill where they spent the night in the social room of a dormitory. The Sparrows did not accompany them to Chapel Hill but went instead to Folly's Beach in South Carolina. On Saturday, this group returned to Charlotte and Karen and Oxidine went to the house belonging to one of his relatives where they spent the night. Karen testified that she slept in the bedroom of this house and that Oxidine slept in the same room. They returned to 1200 Central Avenue on Sunday, but late Sunday night they returned to the house where they had spent the previous night. Karen said that she was in the Sparrow's house at 1200 Central Avenue on Friday afternoon when her mother came to look for her but that she hid in a closet in one of the bedrooms upstairs to avoid meeting her mother.

On Monday, 5 May 1969, Officer D. M. Maness, of the Charlotte

Police Department, Youth Bureau Aid Division, went to the house at 1200 Central Avenue to serve the petition on Karen Torpey. When he got to the house he was unable to locate the girl so he went back to his office. After he got to his office, he received a call from Clyde White telling him that the girl was at the Sparrow house. White testified that he had seen Karen Torpey at this house on Sunday evening and that she had been drinking beer from a mayonnaise jar and had offered him a drink. On Monday, 5 May 1969, he met Karen and Oxidine as they were leaving the Sparrow house and walked to a local store with them. As they were leaving he noticed the presence of police officers and when they got to the store, Oxidine asked him to go back to the house and let them know when the officers left. It was after this that he decided to call the police. White accompanied the officers to the house when they went to serve the petition on Karen.

Officer Maness testified that when they went back to the house to serve the petition on Karen they had in their possession, as they did the first time, the petition signed by Mrs. Torpey and a juvenile summons signed by the Deputy Clerk of Superior Court and District Court Judge P. B. Beacham. With his identification in hand, Officer Maness knocked on the door of the Sparrow house and entered when he was told to by Marvin Sparrow. He told Marvin he had a petition for Karen Torpey and Marvin asked him to read it. He told Marvin that he did not have to read it to him since it was for Karen but that he would; however, he was prohibited from reading the petition by the noise coming from the living room. He testified that he told Karen he had a petition for her, that she started toward him and then broke to run just as she reached him. He attempted to stop her and she grabbed his arm and bit him. Clyde White testified that as the officer grabbed Karen, Marvin shoved the officer in an attempt to prevent him from holding Karen. As Marvin shoved Officer Maness, Lt. J. R. Hall took Marvin and pulled him off of Officer Maness and placed him under arrest for interfering with an officer. As he started out of the door with Marvin, Kathy Sparrow began to pull at her husband in an attempt at freeing him and as they reached the door she kicked Lt. Hall. When this occurred, she was also arrested for interfering with an officer. Marvin testified on direct examination that he did not shove or push the officer but that he fell or was pushed into him. On cross-examination, the following exchange took place between Marvin and the Court:

"Q. You heard Officer Hall testify you were the one that grabbed him?

"A. Yes, I believe I heard that.

"Q.  They are just mistaken about that, aren't they?

"A.  They are lying.

"COURT:  Beg pardon?

"A.  They are lying. They are not telling the truth.

"COURT:  Now let's refrain from that sort of characterization.

"A.  I'm sorry, he asked me.

"COURT:  You heard me too, didn't you?"

All defendants were convicted by a jury of contributing to the delinquency of a minor and the Sparrows were also convicted of interfering with an officer. From this conviction and sentences imposed thereon, the defendants gave notice of appeal to this Court.

*Robert Morgan, Attorney General, and Burley B. Mitchell, Jr., Staff Attorney, for the State.*

*George S. Daly, Jr., Adam Stein, and Thomas Allman, for the defendants appellants.*

HEDRICK, J.

[1]  The appellants' first assignment of error is based on their exceptions to the fact that the judgment imposed in each case by the Judge in the Superior Court was more severe than that imposed in the District Court. The appellants contend that the imposition of greater sentences denied them due process of law and violated rights secured them by the Sixth Amendment to the U. S. Constitution. We do not agree. Article I, Sec. 13, of the North Carolina Constitution provides:

> "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful persons in open court. The Legislature may, however, provide other means of trial, for petty misdemeanors, with the right of appeal."

In *State v. Sherron,* 4 N.C. App. 386, 166 S.E. 2d 836 (1969), where the identical question was raised, Parker, J., speaking for the Court, said:

> "By G.S. 7A-272 the district court has exclusive, original jurisdiction for the trial of criminal actions below the grade of felony, and the same are declared to be petty misdemeanors. G.S. 7A-196 provides: 'In criminal cases there shall be no jury trials in the district court. Upon appeal to superior court trial

shall be de novo, with jury trial as provided by law.' This provision does not transgress the requirements of Art. I, § 13 of our State Constitution. *State v. Norman*, 237 N.C. 205, 74 S.E. 2d. 602; *State v. Pulliam*, 184 N.C. 681, 114 S.E. 394."

On appeal from district court to superior court trial is de novo. *State v. Overby*, 4 N.C. App. 280, 166 S.E. 2d 461 (1969); *State v. Meadows*, 234 N.C. 657, 68 S.E. 2d 406 (1951). We do not agree with the appellants' contention that *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), is authority for holding that in cases involving petty misdemeanors which are appealed from the district court to the superior court where trial de novo is had, the superior court judge cannot impose a more severe sentence than did the district court judge. See *Michigan v. O'Lary*, 382 Mich. 559, 170 N.W. 2d 842 (1969).

[2] The appellants by assignment of error No. 2 contend that the statutes, G.S. 110-21 and G.S. 110-39, under which they were charged, are unconstitutional for vagueness. The North Carolina Supreme Court was faced with an issue identical to the one raised in the instant case in *In Re Burrus*, 275 N.C. 517, 169 S.E. 2d 879 (1969). In answer to the question raised, the Court, speaking through Huskins, J., said, at page 531:

"Appellants argue that the statute fails to define any of the operative terms such as 'delinquent', 'unruly', 'wayward', 'misdirected' and 'disobedient' and contend that the statute is therefore void for vagueness and uncertainty.

"It is settled law that a statute may be void for vagueness and uncertainty. 'A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' 16 Am. Jur. 2d, Constitutional Law § 552; *Cramp v. Board of Public Instruction*, 368 U.S. 278, 7 L. ed 2d 285; 82 S. Ct. 275; *State v. Hales*, 256 N.C. 27, 122 S.E. 2d 768. Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met. *United States v. Petrillo*, 332 U.S. 1, 91 L. ed 1877, 67 S. Ct. 1538."

Our courts have construed these juvenile statutes and have consistently upheld their constitutionality. *State v. Burnett*, 179 N.C. 735, 102 S.E. 711 (1920); *State v. Coble*, 181 N.C. 554, 107 S.E.

132 (1921); *In Re Hamilton,* 182 N.C. 44, 108 S.E. 385 (1921); *In Re Coston,* 187 N.C. 509, 122 S.E. 183 (1924); *Winner v. Brice,* 212 N.C. 294, 193 S.E. 400 (1937); *In Re Burrus,* 4 N.C. App. 523, 167 S.E. 2d 454; modified and affirmed, *supra.* Statutes similar to the N. C. Juvenile Courts Act have been held constitutional in over forty states against numerous attacks. *In Re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967); See Paulson, *Kent v. United States: The Constitutional Context of Juvenile Cases,* 1966 Supreme Court Review 167, 174.

[3]    By assignment of error No. 3, the defendants challenge the sufficiency of the warrants which charge each of the defendants with contributing to the delinquency of a minor. The assignment of error is based on the defendants' exception to the court's refusal to grant their motion for a bill of particulars. This exception does not support the assignment of error; nevertheless, we must consider the sufficiency of the warrant to support the judgment entered on the verdict as to the defendant Britton Oxidine. We believe that the warrant is sufficient to charge the defendants with a violation of G.S. 110-39. The warrant is couched in the language of the statute and the statute is cited. It is true that the words "harboring and providing lodging" standing alone would be insufficient, but the warrant must be read in its entirety. We believe the allegation that the defendants "did unlawfully, wilfully, contribute to the delinquency of Karen Torpey, white female, age 14, in violation of G.S. 110-39 of North Carolina by harboring and providing lodging for Karen Torpey and wilfully concealing said minor from officers knowing they had petitions for said Karen Torpey for delinquency, runaway and truancy" was sufficient to charge the offense. To wilfully conceal a minor from officers knowing that they had a petition for her arrest for runaway and truancy is an act calculated to contribute to the minor's delinquency. The allegation is sufficient to identify the offense with which the defendant is charged, to protect the defendant from being put in jeopardy twice for the same offense, to enable the accused to prepare for trial, and to allow the court, on conviction, plea of nolo contendere or guilty, to pronounce sentence. *State v. Greer,* 238 N.C. 325, 77 S.E. 2d 917 (1953).

This assignment of error is overruled.

[4, 5]    The appellants' fourth assignment of error was that the trial court erred in denying their motion to sequester the State's witnesses. In North Carolina, the sequestration of witnesses during a trial rests solely in the discretion of the trial judge, and the exercise of his discretion is not reviewable on appeal except where there

has been an abuse of discretion. *State v. Clayton,* 272 N.C. 377, 158 S.E. 2d 557 (1968); *State v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670 (1954); *State v. Lovedahl,* 2 N.C. App. 513, 163 S.E. 2d 413 (1968). A thorough examination of the record on appeal discloses that defendants were given ample opportunity to cross-examine the witnesses for the State and that they did, in fact, exercise their right to cross-examine. We find no abuse by the trial judge in the exercise of his discretion.

[6]  The appellants' fifth assignment of error is as follows: "The evidence in this case was obtained as the result of an illegal entry of a private dwelling and should have been excluded." By this assignment of error the appellants apparently attempt to raise the question of the legality of the entry by the officers into the Sparrow house; however, of the fifteen exceptions upon which the assignment of error is based, only three seem to relate to evidence obtained as a result of the entry. The fifteen exceptions grouped under this assignment of error raise questions of law not embraced in the assignment; nevertheless, since the entry into the Sparrow house by the officers for the purpose of serving the petition upon the juvenile, Karen Torpey, resulted in the charges of interfering with an officer against Marvin and Kathy Sparrow, we have considered the question of whether the entry into the Sparrow house by the officers was lawful, and whether any evidence obtained as a result of the entry was admissible.

The evidence for the State tends to show that when the officers went to the Sparrow house to serve the petition on Karen Torpey they knocked on the front door and were invited into the house. Clearly, an entry made by police officers after being told to "come in" by the occupant of a house is not an illegal entry. *State v. Smith,* 242 N.C. 297, 87 S.E. 2d 593 (1955). Even so, the officers had in their possession a "juvenile summons" issued by the district court of Mecklenburg County to be served on Karen Torpey. In *State v. Wright,* 1 N.C. App. 479, 162 S.E. 2d 56, affirmed on other grounds, 274 N.C. 380, 163 S.E. 2d 897 (1968), it is stated that an officer may not be interfered with when he is acting pursuant to a "writ . . . sufficient on its face to show its purpose, even though it may be irregular or defective in some respects." It is not for the officer to scrutinize each warrant or process he is to serve to determine its legal sufficiency. Even though a writ may be defective or irregular in some manner, if it is sufficient on its face to show its purpose, the officer is protected. *State v. Wright, supra.*

The fifth assignment of error is overruled.

[7] The sixth assignment of error relates to the action of the court in sustaining the objections to questions asked by defendants' counsel in his cross-examination of several of the State's witnesses. The defendants contend that the action of the judge in sustaining these objections was an arbitrary restriction of their right to cross-examine the State's witnesses and an infringement of their Sixth Amendment right of confrontation. Of the seven exceptions grouped within this assignment, four of them were to the sustaining of objections made by the State. Of these four exceptions, the record does not disclose what the reply of the witnesses would have been had they been permitted to answer; therefore, it is impossible for us to know whether the ruling was prejudicial to the defendants. The record does not disclose that there was any effort made by counsel for the defendants to get the answers to the questions put in the record. It is incumbent upon the appellant not only to state that this was error but to show that such error was prejudicial to him. *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272 (1967); *State v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342 (1955).

The other three exceptions embraced within this assignment of error relate to the admissibility of evidence offered by the State and have nothing to do with the defendants' sixth assignment of error. This assignment of error is without merit.

[8] The defendants' seventh assignment of error is that the trial court was biased and made comments on the evidence throughout the trial. On direct examination Marvin Sparrow was asked by his attorney to tell the court what occurred immediately prior to the arrival of the officers. Marvin replied: "Well, we had, all the people in the house had come into the living room for a meeting. We were talking about the police harassment we had been having for the last . . ." Upon objection of the solicitor and motion to strike, this testimony was stricken from the record. There was no error in the court's ruling since the answer was not responsive to the question. By this testimony the witness was obviously undertaking to express his contempt for the law enforcement officers. What the residents of the Sparrow house were discussing immediately before the officers arrived was not in any way relevant to the instant cases.

[9] The defendants contend that the exchange that took place between Marvin Sparrow, the solicitor and the court, when the defendant was told to refrain from calling the police liars, was a comment by the judge which produced prejudicial error under G.S. 1-180. We do not agree. In this situation, the judge was very careful to do all within his power to prevent the defendant from prejudicing the jury

against himself. The conduct of the defendant Sparrow was uncalled for and was clearly an attempt on his part to assert, completely out of order, his opinion on the conduct of the police officers. The defendant, in his brief, states that "For the Court to then direct the witness, because of his use of this word (liar), 'Now, let's refrain from that sort of characterization', and upon the witness' ingenuous reply of 'I'm sorry, he asked me,' to further admonish him with, 'You heard me, too, didn't you?' is a shocking violation of G.S. 1-180, and a clear comment by the judge on the weight of the evidence. This exchange sounds like an overly authoritarian father lecturing a child, and has no place in a court of law." It is apparent from the foregoing that it is being asserted that witnesses should be allowed an unfettered right to take the witness stand and conduct the trial as they see fit without regard to rights of others involved in the trial. As was said in *State v. Kirkman*, 234 N.C. 670, 68 S.E. 2d 315 (1951):

> "The conduct of a trial in the Superior Court, the preservation of order and the prevention of unfair tactics and behaviour *on the part of witnesses and others* must be left in large measure to the control and wise discretion of the presiding judge."

We believe that the judge was acting properly in this case to prevent the defendant from causing any prejudicial effect by his words or actions. Any other course on the part of the trial judge would have allowed the defendant to prejudice the jury against himself.

Exceptions 18, 24, 35, 36 and 39 relate only to the admissibility of certain evidence offered by the State and in no way support the assignment of error.

The appellants' eighth assignment or error is based on the defendants' exceptions to the court's denial of their motions for judgment as of nonsuit. In considering a motion for judgment as of nonsuit it is necessary to consider the evidence in the light most favorable to the State.

### *Contributing to the delinquency of a minor:*

[10]    We have examined the record in regard to this charge and have been unable to find any evidence which would tend to show that Marvin and Kathy Sparrow wilfully concealed Karen Torpey from the police knowing that they had a petition for her arrest. Karen Torpey testified that she spoke to the Sparrows briefly on three occasions. She did not ask them for permission to stay overnight in their house and there was no evidence which would impute

to them any knowledge of her presence. In fact, the evidence shows that they were not even at home on two of the nights but were in South Carolina. As to the defendants, Marvin and Kathy Sparrow, upon the charge of contributing to the delinquency of a minor, we hold that their motion for judgment as of nonsuit ought to have been allowed.

### Britton Oxidine
#### Contributing to the delinquency of a minor:

[10]    An examination of the record discloses that the evidence was sufficient to raise the inference that Britton Oxidine knew that the police had a petition to take Karen Torpey into custody for runaway and truancy and that she was, in fact, truant from home and school and that she was less than sixteen years of age. The evidence tends to show that Oxidine talked to Mrs. Torpey when she first went to the Sparrow house on Friday afternoon looking for her daughter, and that Mrs. Torpey told him that Karen was only fifteen years of age and that she was away from home without her permission; nevertheless, Oxidine later that week went with Karen and others on a trip to Chapel Hill, North Carolina, where they collectively spent the night in a dormitory. The evidence further tends to show that on the day the officers came to the Sparrow house to look for Karen, Oxidine took her from the house in a deliberate attempt to keep the officers from serving the petition on her. We hold, therefore, that the trial court correctly overruled the defendant Oxidine's motion for judgment as of nonsuit upon the charge of contributing to the delinquency of Karen Torpey.

This evidence was sufficient to allow the jury, but not compel it, to conclude that Britton Oxidine did, in fact, contribute to the truancy, waywardness and uncontrollable conduct of Karen Torpey.

#### Interfering with an officer:

[11]    The evidence shows that when the officer attempted to hold Karen Torpey as she ran from the house, the defendant Marvin Sparrow pushed the officer and tried to prevent him from getting to Karen. When Marvin was arrested, his wife, Kathy, tried to pull him away from the officers and when this failed she resorted to kicking the officer as he went out the door. The appellants argue that these acts were not interfering with an officer in the performance of his duty since at the time they occurred the petition had already been served on Karen Torpey. This argument has a hollow ring since the act of serving the process did not terminate, in and of itself, the duty of the officers. They were under a duty to take Karen

from the house and into their custody. She was attempting to evade the officers when the defendants intervened. Clearly, this evidence was sufficient to raise an inference that the defendants, Kathy and Marvin Sparrow were attempting to obstruct the officers in the performance of their duty. The trial court was correct in overruling their motion for judgment as of nonsuit as to this charge.

**[12]** As their final assignment of error the defendants allege that the trial court committed error in denying their motion to have the court reporter record the State's closing argument to the jury, thereby impairing their statutory and constitutional rights to judicial review. The motion was made after defendants' counsel had argued the case to the jury. The court, in the exercise of its discretion, denied the motion. The defendants did not object to any portion of the solicitor's argument during the trial, nor does the record on appeal point out any portion of the argument which they contend to have been prejudicial.

**[13, 14]** It may be appropriate to point out that there are rigid rules governing the requirements for the record on appeal. It is not a requirement of these rules that the arguments of counsel be included in the record on appeal. Rule 19(a), Rules of Practice in the Court of Appeals of North Carolina. Compliance with these rules affords all parties adequate appellate review. When an attorney makes improper argument to the jury, it is the duty of the presiding judge to correct the transgression upon objection by the opposing attorney or *ex mero motu. Cuthrell v. Greene,* 229 N.C. 475, 50 S.E. 2d 525 (1948). Where, as here, there are no objections by the opposing attorney, and the trial judge has found no impropriety, we can but assume there was no improper argument.

**[12]** The burden is on the appellant to show that he was prejudiced by the argument; moreover, the burden is on the appellant to make up the record on appeal. If he contended that the solicitor made improper argument he could have called it to the attention of the trial judge during the trial, or he could have included the remarks of the solicitor in the record on appeal himself. We know of no statute or rule requiring that the argument of counsel be recorded. This assignment of error is without merit.

The result is: As to the defendant Marvin Sparrow, on the charge of contributing to the delinquency of a minor — Reversed. As to the defendant Katherine Sparrow on the charge of contributing to the delinquency of a minor — Reversed. As to the defendant Marvin Sparrow on the charge of interfering with an officer — No error. As

to the defendant Katherine Sparrow on the charge of interfering with an officer — No error. As to the defendant Britton Oxidine on the charge of contributing to the delinquency of a minor — No error.

MALLARD, C.J., and MORRIS, J., concur.