A. Ernest **FITZGERALD** et al., Plaintiffs,

v.

Robert E. **HAMPTON**, Chairman U. S.
Civil Service Commission et al.,
Defendants.

Civ. A. No. 1109–71.

United States District Court,
District of Columbia.

June 25, 1971.

John Bodner, Jr., Washington, D. C.,
for plaintiffs.

Thomas A. Flannery, U. S. Atty.,
Joseph M. Hannon, J. Michael McGarry,
III, Asst. U. S. Attys., Washington, D. C.,
for defendants.

## OPINION AND ORDER

BRYANT, District Judge.

Plaintiff Fitzgerald was separated
from his federal employment as Deputy
for Management Systems, Office of the
Secretary of the Air Force, on January
5, 1970. The termination was purported
to be based on the abolition of the posi-
tion through a reduction in force pro-
ceeding. Plaintiff appealed to the Civil
Service Commission alleging that his
separation from the federal service was
contrary to federal law and Civil Service
Commission regulations in that it was in
fact a retaliatory measure for certain
testimony given before congressional
committees. He also requested a hear-
ing. The request for hearing was
granted, and long prior to its scheduled
commencement plaintiff made numerous
requests that the proceedings be open to
the public and the press. The Commis-
sion refused to open the hearing relying
on a published regulation that hearings
are not open to the public or the press.
5 C.F.R. § 772.305. At the time of the
hearing, this request was renewed and
again refused. The hearing commenced
—closed to the public and the press.

The case came on to be heard by the
court on June 14, 1971, on plaintiffs'
motion for a preliminary injunction.
On June 17, the court denied the motion,
finding that plaintiff had not made the
showing required for that extraordinary
form of relief. On the same day plain-
tiffs moved for summary judgment and
for expedited consideration, in view of
the fact that the closed hearing the com-
plaint seeks to enjoin was continuing on
a daily basis and would be completed
long before the court would resolve this
case in the ordinary course of events.
On June 22, the court issued a tempo-
rary restraining order against continua-
tion of the closed hearing, pending the
court's expedited consideration of the
motion for summary judgment and the
government's opposition thereto.

Plaintiff Fitzgerald claims that this
closed hearing is unconstitutional and, if
allowed to proceed, would result in a
fundamental right forever lost to him.
The important advantages of a public
hearing in judicial and quasi-judicial
proceedings have been thoroughly recog-
nized—to the extent of being taken for

granted as an ingredient of due process. In federal criminal prosecutions public hearing is guaranteed by the Sixth Amendment to our Constitution. As for civil proceedings, Federal Rule of Civil Procedure 77(b) requires that "All trials upon the merits shall be conducted in open court and insofar as convenient in a regular courtroom."

In Federal Communications Commission v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965), the Court, per Mr. Chief Justice Warren, upheld the right of an agency to insist upon open hearings, even in an investigatory, rather than an adjudicatory, proceeding. In referring to the FCC regulation at issue the Court said, "The procedural rule, establishing a presumption in favor of public proceedings, accords with the general policy favoring disclosure of administrative agency proceedings." 381 U.S. at 293, 85 S.Ct. at 1469.

In Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129 (1937), Mr. Chief Justice Hughes, speaking for the Court, stated:

> "[I]n administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,' essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process." 304 U.S. at 14–15, 58 S.Ct. at 775.

Counsel for defendant seeks to avoid the requirements of strict due process procedures by urging that hearings held by the staff of the Commission are not prosecutorial in nature but are part of an administrative fact-finding process. True, the hearing is not prosecutorial in nature, but it is nevertheless one where the final outcome is a decision on the merits of the issues raised, and this decision directly affects the legal rights of an individual. Fitzgerald's right to a livelihood is at stake. The hearing is an adversary proceeding. The Air Force is represented by counsel and so is plaintiff. Witnesses testify under oath and cross examination is extensive. It is an adjudicatory process, and it is quasi-judicial.

If a public hearing is accepted as an ingredient of fair trial, plaintiff's position is further supported by our own Court of Appeals.

> "Just exactly how the concept of 'due process' is to be applied will vary with the type of proceeding involved, as we are well aware.
>
>> 'Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process.' [Citing Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).]

"At the very least, quasi-judicial proceedings entail a fair trial." Amos Treat & Co. v. Securities and Exchange Commission, 113 U.S.App. D.C. 100, 103, 306 F.2d 260, 263 (1962).

A fountainhead case setting out the salutary features of open and public proceedings is In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). This case has often been relied upon in support of the principle in other than criminal proceedings. K. Davis, Administrative Law § 8.09 (1970 Supp.); see also, J. Wiggins, "The Public's Right to Public Trial," 19 F.R.D. 25 (1955).

On Monday of this week the Supreme Court ruled that jury trials are not a constitutional requisite in state juvenile delinquency proceedings. McKeiver v. Pennsylvania and In re Burris, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Mr. Justice Brennan, after agreeing with the Court that the proceedings were not criminal prosecutions within the meaning of the Sixth Amend-

ment, concurred in *McKeiver* and dissented in *Burris* precisely because trial in the former case was open while the public was excluded in the latter case.

"In the Pennsylvania cases before us, there appears to be no statutory ban upon admission of the public to juvenile trials. Appellants themselves, without contradiction, assert that 'the press is generally admitted' to juvenile delinquency proceedings in Philadelphia. Most important, the record in these cases is bare of any indication that any person whom appellants sought to have admitted to the courtroom was excluded. In these circumstances, I agree that the judgment in No. 322 must be affirmed.

"The North Carolina cases, however, present a different situation. North Carolina law either permits or requires exclusion of the general public from juvenile trials. In the cases before us, the trial judge 'ordered the general public excluded from the hearing room and stated that only officers of the court, the juveniles, their parents or guardians, their attorney and witnesses would be present for the hearing.' In re Burrus, 4 N.C.App. 523, 525, 167 S.E.2d 454, 456 (1969), notwithstanding petitioners' repeated demand for a public hearing." 403 U.S. at 556, 91 S.Ct. at 1991. [Footnotes omitted.]

As against all the weighty considerations favoring open hearings, the only justification of any substance that defendants have advanced in support of the regulation's flat prohibition of them is the protection of the privacy of the appellant-employee. This consideration is obviously of no validity where it is the appellant-employee who wants the open hearing.

The advantages of an open hearing are powerful but, at the same time, intangible. This latter observation is important to the court's action. In many respects the worst that can be said

about the closed hearing presently contemplated by the Commission is that it makes room for the probability of unfairness, but then "our system of law has always endeavored to prevent even the probability of unfairness." *Amos Treat, supra,* 113 U.S.App.D.C. at 113, 306 F.2d at 263, citing In re Murchison, 349 U.S. 133, 136–137, 75 S.Ct. 623, 99 L.Ed. 942 (1955). The court is aware of the admonition of our Court of Appeals that the District Court should not exert judicial power to restrain the processes of a regulatory body exercising quasi-judicial powers which can be judicially reviewed as a matter of right before they become final. The present Chief Justice, then Circuit Judge Burger in *Wolf Corp. v. Securities and Exchange Commission,* 115 U.S.App.D.C. 75, 317 F.2d 139 (1963) stated that:

"To exert judicial power to stop processes of this * * * category, which can always be judicially reviewed when the story is fully told and recorded, is an extraordinary step in the usual as well as the legally artful sense of that word." 115 U.S. App.D.C. at 79, 317 F.2d at 143.

It seems that the probability of unfairness presented by non-public proceedings does not lend itself to judicial review when the story is fully told and recorded. What can the record reveal other than that the hearing was closed?

It appears that the doctrine enunciated in *Amos Treat, supra,* justifies this court's intervention to the extent of ordering that the hearings be open to the public and the press. Accordingly, it is by the court this 25th day of June, 1971,

Ordered that plaintiff's motion for summary judgment is granted, and it is further

Ordered that the defendants, their agents and employees are permanently enjoined from holding hearings closed to the press and the public in the appeal of plaintiff Fitzgerald.