189 N.W.2d 644 (1971)
In the Matter of R. Y., Jr., a Person Alleged to be a Juvenile Delinquent.
Civ. No. 8688.
Supreme Court of North Dakota.
Opinion June 22, 1971.
Special Concurrence July 29, 1971.
Opinion Filed September 7, 1971.
Wattam, Vogel, Vogel & Peterson, Fargo, for R. Y., Jr., appellant.
Helgi Johanneson, Atty. Gen., Bismarck, and Russell D. Maring, Jack Marcil, Asst. State's Attys., Fargo, for respondent.
TEIGEN, Judge.
This is an appeal from a final order of the Cass County Juvenile Court which adjudicates R. Y., Jr., a delinquent child. The appeal is taken pursuant to Section 27-20-56, N.D.C.C.
The Cass County Juvenile Court found R. Y., Jr., had committed a delinquent act, designated as robbery in the first degree under the laws of this State, and that he is in need of treatment and rehabilitation. The court committed R. Y., Jr., to the North Dakota Industrial School for a period of two years pursuant to Section 27-20-36, N.D.C.C., but deferred execution of the commitment and placed him on conditional probation in the custody of his parents.
There are two major issues raised on this appeal. They are succinctly stated as follows: (1) Are our statutes, which give exclusive jurisdiction to the juvenile court in a delinquency proceeding against a child under the age of sixteen years and provide that the hearing shall be conducted by the juvenile court without a jury, violative of the Federal and State constitutions; and (2) Was the evidence sufficient to prove beyond a reasonable doubt that R. Y., Jr., *645 had committed the delinquent act alleged in the petition?
The petition charges that R. Y., Jr., together with two juvenile accomplices, committed the unlawful act of armed robbery which, under the law, constitutes robbery in the first degree, in that he took about $40 in money from the proprietor of a place of business by putting him in fear and striking him about the head and body with a blunt instrument.
Prior to the hearing R. Y., Jr., through his counsel, made three motions, each of which was denied by the court on statutory grounds. He moved for a dismissal of the proceedings on the ground that the juvenile court was without jurisdiction since the Juvenile Court Act deprives a child alleged to be a delinquent of his constitutional right to a jury trial. When this motion was denied, he moved that the case be transferred from the juvenile court to the district court for trial on a charge of robbery. Upon denial of this motion, he moved and asked for a jury trial in the juvenile court, which was denied. An adjudicatory hearing was held and, at the close of the evidence, R. Y., Jr., through his counsel, moved that the proceedings be dismissed on the grounds that the evidence was insufficient to identify R. Y., Jr., as a participant in the robbery and that the evidence was insufficient to find that he had committed the alleged act. This motion was also denied. At the close of the hearing the juvenile court found that the evidence established proof beyond a reasonable doubt that R. Y., Jr., had committed the acts, by reason of which he was alleged to be delinquent, and it then proceeded to hear evidence as to whether or not he was in need of treatment and rehabilitation. Subsequent thereto, the court issued the order from which this appeal is taken.
In 1969 the legislature of this state adopted the Uniform Juvenile Court Act (Ch. 27-20, N.D.C.C.) proposed by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association in 1968. It repeals all of Chapter 27-16, N.D.C.C., which chapter provided for the juvenile court prior thereto and governed its procedure. This Act incorporates all of the essentials imposed on the juvenile courts by Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. In addition, Section 27-20-29, N.D.C.C., requires proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent, and thus complies with the requirements announced later in the case of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (March 1970).
The constitutional attack in this case is focused upon Section 27-20-24(1), N.D.C.C. This section provides:
"Hearings under this chapter shall be conducted by the court without a jury, * * *"
It is argued that this section is violative of the Sixth Amendment to the United States Constitution, which provides:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed * * *";
and of Section 7 of the North Dakota Constitution, which provides:
"The right of trial by jury shall be secured to all, and remain inviolate; * *"
R. Y., Jr., through his counsel, admits that the Supreme Court of the United States has not directly decided that a child alleged to be delinquent is entitled to a jury trial as a matter of right. However, he argues that the clear trend of its decisions is in that direction and that, on the basis of these decisions, this court should hold that a jury trial is required under these constitutional provisions where a child is alleged to be delinquent and faces the possibility of being committed to the North Dakota Industrial School for a period of two years.
*646 In support of this argument counsel cites the following United States Supreme Court decisions. In re Gault, supra; In re Winship, supra; Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, rehearing denied, 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412; Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522; and makes reference to In re Whittington, 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625, and DeBacker v. Brainard, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148.
Gault and Winship do not stand for the proposition that a jury trial is required in a delinquency proceeding. Duncan applied the jury trial provision by way of the Fourteenth Amendment's Due Process Clause to state criminal proceedings involving serious criminal offenses. It holds that a misdemeanor punishable up to two years imprisonment is a serious criminal offense. Bloom expands upon Duncan and holds that the Sixth Amendment's guarantee of a jury trial is applicable through the Fourteenth Amendment to the states to serious criminal contempts, and that when the state statute does not fix the maximum penalty the court will look to the penalty actually imposed as the best evident of the seriousness of the contempt charge.
In Whittington and DeBacker the United States Supreme Court had presented to it the issue of whether a child was denied his constitutional right to trial by jury in a juvenile court proceeding charging delinquency. The question was not decided in either case. In Whittington, the case was remanded to the Ohio court for consideration in light of Gault, which was decided some two months after the decision of the Ohio Supreme Court. In DeBacker, which was decided after the Duncan and Bloom cases, the Supreme Court refused to decide the issue because it had held in De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308, that Duncan and Bloom "should receive only prospective application", and stated that it would "not reverse state convictions for failure to grant jury trial where trials began prior to May 20, 1968 * * *", which is the date of the court's decisions in Duncan and Bloom.
It appears that there are two cases pending before the United States Supreme Court in which a state supreme court decided that juveniles did not have a right to trial by jury in proceedings in which they were adjudged delinquent. These two cases are: In re Terry, 438 Pa. 339, 265 A.2d 350, cert. granted, McKeiver and Terry v. Pennsylvania, 399 U.S. 925, 90 S.Ct. 2271, 26 L.Ed.2d 791, argued on Dec. 9, 1970 (39 L.W. 3257); and In re Burrus, 275 N.C. 517, 169 S.E.2d 879, cert. granted, In re Barbara Burrus, et al, 397 U.S. 1036, 90 S.Ct. 1379, 25 L.Ed.2d 647, argument commenced Dec. 9, 1970, and concluded Dec. 10, 1970 (39 L.W. 3257.) It appears from the state decisions reported in these two cases that the question may now be squarely before the United States Supreme Court; however, we have no assurance that these decisions, when announced, will decide it. In view of this contingency, we will proceed to decide this case.
Under the common law there was no special judicial system for juveniles. Prior to the enactment of the various juvenile codes in the United States, most jurisdictions treated juveniles as adults in criminal proceedings and accorded them all of the privileges and rights as such. However, the legislature has the power to define what acts shall constitute criminal offenses and to fix the age of criminal responsibility. It also has the power to say that an act done by a child shall not constitute a crime or be punishable as such. The legislative assembly of the Territory of Dakota fixed the age of criminal responsibility and provided that every child under the age of seven years is conclusively presumed to be incapable of committing a crime, but that "children of the age of seven years, but under the age of fourteen years, in the absence of proof that at the time of committing the act or neglect charged against them, they knew its wrongfulness" also are deemed incapable of committing a crime. *647 Penal Code, Dakota Territory, 1877, Sec. 16(2). These statutory provisions are still retained in force. Section 12-02-01, N.D. C.C. If the legislature has the power to determine the age of criminal responsibility, it may also change the age and fix it conditionally as it has done in Section 27-20-34, N.D.C.C. This section provides that the juvenile court may transfer the offense for prosecution to the appropriate court having jurisdiction of the offense if the child was sixteen or more years of age at the time of the alleged delinquent conduct.
Chapter 27-20, N.D.C.C. (Uniform Juvenile Court Act), shall be construed to effectuate the following purposes as stated in Section 27-20-01, N.D.C.C.:
"This chapter shall be construed to effectuate the following public purposes:
"1. To provide for the care, protection, and wholesome moral, mental, and physical development of children coming within its provisions;
"2. Consistent with the protection of the public interest, to remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior and to substitute therefor a program of treatment, training and rehabilitation;
"3. To achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interest of public safety;
"4. To provide a simple judicial procedure through which this chapter is executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced; and
"5. To provide simple interstate procedures which permit resort to cooperative measures among the juvenile courts of the several states when required to effectuate the purposes of this chapter."
Section 27-20-02, N.D.C.C., establishes the district court of this state as the "juvenile court." Section 27-20-03, N.D.C.C., grants the juvenile court exclusive jurisdiction of proceedings in which a child is alleged to be delinquent, unruly or deprived. It also has exclusive jurisdiction in proceedings for the termination of parental rights, to obtain judicial consent to marriage, employment, enlistment in the armed services, under interstate compact on juveniles, and under ininterstate compact on the placement of children. It has concurrent jurisdiction with the county mental health board of proceedings to treat or commit a mentally retarded or mentally ill child otherwise subject to the jurisdiction of the court (Section 27-20-04, N.D.C.C.).
Under the Uniform Juvenile Court Act of this state a delinquent child is defined as a child under the age of eighteen years who has committed a delinquent act and is in need of treatment or rehabilitation. A delinquent act is defined as an act designated a crime under the law, including local ordinances or resolutions of this or another state, if the act occurred in that state, or under federal law. An unruly child is defined as a child who is habitually and without justification truant from school or who is habitually disobedient of the reasonable and lawful commands of his parent, guardian or other custodian, and is ungovernable, or has committed an offense applicable only to a child and, in any of the foregoing, is in need of treatment or rehabilitation. Section 27-20-02, N.D.C.C.
The Act establishes the order and method of proceeding and requires all of the safeguards in the adjudicatory state of the proceeding made requisite by Kent, Gault and Winship. If the court finds in the adjudicatory proceeding that the child is delinquent, or unruly, or a deprived child, it then proceeds to the dispositional phase of the hearing. If the child is found to be delinquent or unruly, the juvenile court is authorized to elect several means of disposition and shall choose that which is "best suited to his treatment, rehabilitation and *648 welfare * * *" Sections 27-20-31, 27-20-32, 27-20-35, 27-20-36 and 27-20-37, N. D.C.C. Any order of disposition, except an order terminating parental rights, continues in force for not more than two years, except that an order committing a delinquent or unruly child to the state industrial school may be extended by the court for additional two-year periods following a hearing on reasonable notice and an opportunity to be heard, and if the court finds that the extension is necessary for the treatment or rehabilitation of the child. However, all orders, except the one terminating parental rights, expire when the child reaches twenty-one years of age. Section 27-20-36, N.D.C.C. This section also authorizes the state industrial school to sooner discharge a child committed to that institution and the court may sooner terminate its order of disposition, other than a commitment to the state industrial school, if it appears that the purposes of the order have been accomplished.
The Act specifically provides that an order of adjudication, or of disposition, is noncriminal and that the evidence produced may not be used against the child in any other court. It states:
"1. An order of disposition or other adjudication in a proceeding under this chapter is not a conviction of crime and does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment. A child shall not be committed or transferred to a penal institution or other facility used primarily for the execution of sentences of persons convicted of a crime.
"2. The disposition of a child and evidence adduced in a hearing in juvenile court may not be used against him in any proceeding in any court other than a juvenile court, whether before or after reaching majority, except in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report." Section 27-20-33, N.D.C.C.
Although the Act provides that the juvenile court has exclusive original jurisdiction in proceedings in which a child is alleged to be delinquent, unruly or deprived (Section 27-20-03, N.D.C.C.), the court is authorized, when a petition has been filed alleging delinquency, to transfer the offense for prosecution to the appropriate court having jurisdiction of the offense (Section 27-20-34, N.D.C.C.). The transfer cannot be made, however, unless the child was more than sixteen years of age at the time of the alleged conduct, and a hearing is held in conformity with the statutes which require all of the basic rights required by Kent and Gault. The Act also contains provisions for the protection of delinquent or unruly children found to be suffering from mental retardation or mental illness (Section 27-20-35, N.D.C.C.); it allows transfer of the proceeding to a juvenile court of another county when a child is found to be a resident of that county (Section 27-20-12, N.D.C.C.); it allows the court to transfer a dispositional proceeding to a juvenile court of another state, and to transfer the custody of a child on probation to an accepting juvenile court of another state if the child is, or has become, a resident of that state (Section 27-20-39, N.D.C.C.); it allows the juvenile court of this state to accept jurisdiction of a child found by a requesting court of another state to be delinquent, or unruly, or a deprived child, when such child is, or is about to become, a resident of the county of this state in which the court presides (Section 27-20-40, N.D.C.C.); it allows the court to place a child in the custody of a suitable person in another state (Section 27-20-41, N.D.C.C.); it allows the court to provide for the supervision of a child under the jurisdiction of the court of another state within this state (Section 27-20-42, N. D.C.C.); and allows the court to terminate parental rights (Section 27-20-44, N.D.C.C.).
*649 In this state the legislature has not created a separate court as has been done in some states, but the juvenile court jurisdiction, established by statute, is the district court of the state (Section 27-20-02, N.D.C.C.), which court, by the constitution of this state, is vested with original jurisdiction in all matters in equity. North Dakota Constitution, Section 103; State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W. 2d 514; 42 Am.Jur.2d, Infants, Section 22; 47 Am.Jur.2d, Juvenile Courts, Section 16.
The new Uniform Juvenile Court Act, designated as Chapter 27-20, N.D.C.C. (S.L. 1969, Ch. 289), was intended to embody, and does embody, all of the provisions of law relating to juvenile courts. This Act follows the basic plan of the original Juvenile Court Act of 1911 (S.L.1911, Ch. 177). Many changes have been made from the original enactment; however, they do not detract from the purpose, the efficacy, or the scope of the original law as enacted in 1911 and amended in 1943 (S.L.1943, Ch. 212), except that, in a number of particulars, the changes have strengthened and enlarged the scope and have provided for all of the basic requirements enunciated by the United States Supreme Court in Kent, Gault and Winship. The Act has been improved and has incorporated the changes based upon wisdom of experience gained over a period of fifty-eight years since the first Juvenile Court Act was enacted in 1911.
A child may not be committed to the industrial school merely because he committed a delinquent act. There must also be a finding that he is in need of treatment or rehabilitation. A delinquent child is defined as "a child who has committed a delinquent act and is in need of treatment or rehabilitation." Section 27-20-02, N.D.C.C. [Emphasis added.] At the end of an adjudicatory proceeding, if the juvenile court finds that the child has committed a delinquent act, the court must then proceed to a dispositional hearing, and if it finds that the child is not in need of treatment or rehabilitation "it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered." Section 27-20-29, N.D.C.C. The same provisions are applicable where a child is found to be an unruly child.
If the court finds that the child is a delinquent child, it may, by order, make any of the following orders of disposition:
(1) Permit the child to remain with his parents, guardian, or other custodian subject to conditions and limitations including supervision for the protection of the child;
(2) Transfer temporary legal custody to:
(a) any individual proved by the court to be qualified;
(b) an agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child;
(c) the director of the county welfare board or other public agency authorized by law to receive and provide for the care of the child;
(d) an individual in another state;
(3) Transfer the custody of the child to the juvenile court of another state if the child is or is about to become a resident of that state;
(4) Place the child on probation under supervision of a juvenile supervisor, probation officer, or other appropriate officer of the court, or the court of another state, or director of the county welfare board;
(5) Place the child in an institution, camp or other facility for delinquent children operated under the direction of the court or other local public authority; or
(6) Commit the child to the state industrial school, or to a state department to which commitment of delinquent or unruly children may be made, such as, the State Youth Authority provided by Chapter 27-21, N.D.C.C. Sections 27-20-30 and 27-20-31, N.D.C.C.
As we pointed out earlier, no adjudication upon the status of any child in the jurisdiction *650 of the court shall operate to impose any civil disability ordinarily resulting from a conviction, nor shall it constitute a conviction of a crime. The disposition of a child and evidence adduced at the hearing in juvenile court may not be used against him in any proceeding in any court other than a juvenile court. Section 27-20-33, N.D.C.C.
It is clear that under the new Act adopted by the legislature in 1969, the object, purpose and scope of the Juvenile Court Act has not changed except to improve upon it. What the court stated in Re Solberg, 52 N. D. 518, at 526, 203 N.W. 898, at 901 (1918), is still applicable. The court stated:
"The juvenile court law is not intended to operate as a criminal statute and it should not be so construed. [Citation omitted.] Within its purview are embraced alike the defendant, the neglected and the delinquent child; there is no difference made, as to the nature of the proceedings, between the child who is delinquent and who has probably become guilty of misconduct, which, in a person of full moral responsibility, would be considered reprehensible, and a dependent child, or one who is neglected by its parents, but free from fault of its own. All are placed in the same category, primarily under the protection and care of the family and parents, and only when they have failed, may the state itself assume their care and custody."
In 1926, the court stated in State ex rel. Neville v. Overby, 54 N.D. 295 at 298, 209 N.W. 552 at 553:
"The act should be liberally construed to the end that its purpose may be carried out, to wit: that the care, custody, and discipline of the child shall approximate as nearly as may be that which should be given by its parents."
And further, this court stated, in 1946, in State v. Smith, 75 N.D. 29 at 30, 25 N. W.2d 270 at 271:
"Proceedings under the so-called juvenile law are not prosecutions for crime. The court inquires into the status of the juvenile, his surroundings and his upbringing. He may be of the very best character and yet be in a place unfit for himone that is injurious to his future. The court inquires into the actions of the juvenile and those in charge of him. The main purpose is to determine what is the best to do for him. This may require an investigation of his habits, language and actions."
Still equally applicable today is the statement of Judge Christianson made in 1953 in State v. Gronna, supra, 59 N.W.2d at 534:
"In enacting the juvenile court law the legislature was not concerned with fixing the age at which an offender should be deemed capable of committing a crime under a criminal statute or an offense under a penal ordinance. It was not the aim of the act to provide for punishment of such minors but instead `to treat such minors not as criminals but as wards of the state.' It was clearly the legislative purpose and intent to provide that acts or conduct of such minors which if committed by an adult would constitute a violation of a criminal statute or a penal ordinance and render the perpetrator subject to prosecution and punishment in proceedings in a court exercising criminal or penal jurisdiction shall not render a `child' as defined in the act subject to such prosecution and punishment but shall instead constitute such offender a ward of the state and as such subject to the jurisdiction of a court vested with and exercising chancery or equity powers. In short, by the juvenile court act the legislature intended to establish and did establish a new system and method of dealing with juvenile offenders and invoked the jurisdiction of a court exercising equity powers to deal with such offenders."
In the case of In re Whiteshield, 124 N.W.2d 694 (N.D.1963), this court held, in paragraph No. 1 of the syllabus, as follows:
"The district court, acting under the Juvenile Court Act, exercises equity jurisdiction which is civil in nature."
See also, State v. Gronna, supra.
*651 Under the view that proceedings in juvenile court are not criminal in nature, it is generally held that federal and state constitutional provisions guaranteeing a jury trial are not applicable to such proceedings. 47 Am.Jur.2d, Juvenile Courts, Sec. 47.
Although this court has not specifically passed on the question of whether a jury trial is required under Section 7 of the Constitution of the State of North Dakota in a juvenile court proceeding wherein the child is alleged to be delinquent, we have held that the district court, acting as a juvenile judge under the Juvenile Court Act, exercises equity jurisdiction which is civil in nature. State v. Gronna, supra; In re Whiteshield, supra. The provision in our constitution that right of trial by jury shall remain inviolate neither enlarges nor restricts that right but merely preserves it as it existed at the time of the adoption of our constitution. Barry v. Truax, 13 N.D. 131, 99 N.W. 769; C. I. T. Corporation v. Hetland, 143 N.W.2d 94 (N.D.1966). Where the constitution preserves the right of trial by jury in general terms as our constitution does, it preserves it for all cases in which it could have been demanded as a matter of right at common law. Rivinius v. Huber, 74 N.D. 773, 24 N.W.2d 911; C. I. T. Corporation v. Hetland, supra.
"The general rule is that the right to jury trial preserved by federal and state constitutional provisions has substantially the same meaning, extent, and application that it had at common law and at the time of the adoption of such provisions, and they are to be construed in the light of the common law at that time." 47 Am.Jur.2d, Jury, Section 17.
The juvenile court did not exist prior to the adoption of the North Dakota Constitution in 1889. The first juvenile court as we know it today, came into existence in this country in 1899 when it was established in Cook County, Illinois. State v. Gronna, supra; 47 Am.Jur.2d, Juvenile Courts, Section 1. The first juvenile court was established in North Dakota in 1911 (S.L.1911, Ch. 177). Prior to that time children over the age of seven years were tried as adults. The juvenile court, as it exists today, was unknown at common law. Following the view which our legislature has taken in the adoption of the Juvenile Court Act that juvenile court proceedings are not criminal in nature but are equitable, we determine that the issues are triable to the court without a jury as provided by Section 27-20-24(1), N.D.C.C., and that the statute is not violative of Section 7 of the North Dakota Constitution.
We agree with counsel for R. Y., Jr., that the Supreme Court of the United States has not yet held that a jury trial is required in juvenile court delinquency proceedings. That court has neither expressly nor impliedly said that all of the guarantees of the Bill of Rights need necessarily be applicable. It appears from reading these recent Supreme Court decisions that the United States Supreme Court did not intend complete incorporation of the rights of adults in criminal trials into the juvenile court system. In Gault (387 U.S., at 13, 87 S.Ct. at 1436, 18 L.Ed.2d, at 538), the Supreme Court said:
"We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile `delinquents.' For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. * * * We consider only the problems presented to us by this case."
And further, in Kent (383 U.S., at 562, 86 S.Ct., at 1057, 16 L.Ed.2d, at 97, 98), the court said:
"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must *652 measure up to the essentials of due process and fair treatment."
In Winship (397 U.S., at 359, 90 S.Ct., at 1070, 25 L.Ed.2d, at 372), the court said:

"Gault decided that, although the Fourteenth Amendment does not require that the hearing at this stage conform with all the requirements of a criminal trial or even of the usual administrative proceeding, the Due Process Clause does require application during the adjudicatory hearing of `the essentials of due process and fair treatment.'"
Subsequent to the decisions of the United States Supreme Court in Kent and Gault, a number of state courts have held that a jury trial is not constitutionally guaranteed in a juvenile court proceeding. Estes v. Superior Court, 73 Wash.2d 263, 438 P.2d 205 (1968); DeBacker v. Brainard, 183 Neb. 461, 161 N.W.2d 508, appeal dismissed, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1968); Dryden v. Commonwealth, 435 S.W.2d 457 (Ky.1968); State v. Turner, 253 Or. 235, 453 P.2d 910 (1969); In re Benn, 18 Ohio App.2d 97, 247 N.E.2d 335 (1969); In re Burrus, 4 N.C.App. 523, 167 S.E.2d 454, affirmed, 275 N.C. 517, 169 S.E.2d 879, cert. granted, 397 U.S. 1036, 90 S.Ct. 1379, 25 L.Ed.2d 647 (1969); Hopkins v. Youth Court of Issaquena County, 227 So. 2d 282 (Miss.1969); In re State ex rel. J. W., 106 N.J.Super. 129, 254 A.2d 334, affirmed, 108 N.J.Super. 540, 262 A.2d 9 (1969); In re Terry, 438 Pa. 339, 265 A.2d 350, cert. granted, McKeiver and Terry v. Pennsylvania, 399 U.S. 925, 90 S.Ct. 2271, 26 L.Ed.2d 791 (1970); In re R., 12 Cal. App.3d 80, 90 Cal.Rptr. 530 (1970); In re Fucini, 44 Ill.2d 305, 255 N.E.2d 380 (1970); Bible v. State, 254 N.E.2d 319 (Ind.1970); DeBacker v. Sigler, 185 Neb. 352, 175 N.W.2d 912 (1970) (decided after appeal dismissed by United States Supreme Court, DeBacker v. Brainard, supra). Following Winship, a similar result was reached by the Court of Appeals of New York. See In re D., 27 N.Y.2d 90, 261 N.E.2d 627 (1970).
Three cases have been cited to us in support of a contrary holding. The first case is Peyton v. Nord, 78 N.M. 717, 437 P.2d 716 (1968). However, in that case, the New Mexico Supreme Court based its decision on New Mexico statutes and not Gault. The second case is Nieves v. United States, 280 F.Supp. 994 (U.S.D.C.S.D. N.Y.). The federal district judge held that the Federal Juvenile Delinquency Act was unconstitutional under Gault to the extent that it required a juvenile defendant to waive his right to a jury trial in order to be proceeded against under the Act. The third case is In re Rindell, 36 L.W. 2468. This appears to be a 1968 decision by a judge of the Family Court of Rhode Island in which it is held that, in light of Gault, a jury trial is required where a juvenile is charged with conduct that constitutes a felony if committed by an adult. We do not find that any of these district court opinions have been appealed.
In at least two cases the United States Supreme Court has passed over the issue of whether a child alleged to be delinquent is entitled to a jury trial. In re Whittington, supra, and DeBacker v. Brainard, supra (See 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148). In Whittington, the petitioner, a 14-year-old boy, was alleged to be delinquent on the ground that he had committed a crime that would be a felony if committed by an adult, namely, second degree murder. He appealed from an order adjudicating him a delinquent and raised several constitutional questions, one being that he had been denied his constitutional rights to a trial by jury. Because the state adjudication had been made before the decision in Gault, the United States Supreme Court vacated the judgment and remanded the case to the Ohio courts for consideration in the light of Gault. In DeBacker, the petitioner attacked the "Juvenile Court Act" as being unconstitutional because it denied him the right to a trial by jury and applied the preponderance-of-evidence rule. The appeal to the United States Supreme Court was dismissed by that court for the reason that it was admitted *653 that whatever standard was used, evidence would be sufficient to support a finding of delinquency. Therefore, it failed to pass on the jury question and dismissed the writ on the ground that it was improvidently granted.
Taking into account the reasoning and philosophy expressed in the many cases we have researched, both state and federal, we have reached the conclusion that a child is not constitutionally entitled under the Due Process Clause of the Federal Constitution to a trial by jury in a delinquency hearing in the juvenile court.
We believe that to institute the jury trial as a part of the juvenile court system would so formalize the procedures conducted thereunder as to destroy the very objects and purposes of the Uniform Juvenile Court Act. It would reduce the juvenile court judge to that position now exercised by a judge in a criminal trial. The juvenile court judge must be more than just a decider of the law, as in a criminal trial to a jury who becomes the trier of the facts.
"In essence, a judge of the juvenile court must be more than a trier of fact. He must seek to instill in the child a sense of value, impart a feeling of security and belonging, communicate the importance and dignity of being a member of society and, hopefully, in this manner, prevent the child from pursuing a criminal and anti-social career. A juvenile court judge must, in a unique manner, establish a relationship that will permanently alter the behavior patterns of the child. He must have patience, understanding, and a genuine interest in the welfare of the child and must direct all of his efforts toward rehabilitation." Commonwealth v. Johnson, 211 Pa.Super. 62, 234 A.2d 9, at 16.
The statute provides that the hearing shall be conducted in an informal but orderly manner and separately from other proceedings. Section 27-20-24, N.D.C.C. The juvenile court hearing will have to be conducted as an adversary proceeding if a jury is required. This type of hearing is not in harmony with the intents and purposes of the Act. We believe that the presence of a jury would interfere with the proper administration of the juvenile court system without adding any appreciable protection to the rights of the child, and that fifty-eight years of experience under the present system has proved without any doubt that it is superior in all respects, including benefits to the child which would not be available if he were to be tried before a jury as a criminal. For these reasons, we do not believe that when the United States Supreme Court decides McKeiver and Terry and Burrus it will apply the Sixth Amendment provision through the Fourteenth Amendment to a juvenile court proceeding in which a child is alleged to have committed a delinquent act, and thus impose a jury trial irrespective of harmful effects on the child and the juvenile court system.
Lastly, R. Y., Jr., argues that the evidence adduced was insufficient to prove beyond a reasonable doubt that he had committed the delinquent act alleged in the petition. Section 27-20-56, N.D.C.C., governs us in an appeal from a final order, judgment or decree of the juvenile court. It states, in part:
"The appeal shall be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court."
We have reviewed the evidence and agree with the trial court that it establishes beyond any reasonable doubt that R. Y., Jr., did commit an act designated as a crime under the law of this state, to wit, robbery in the first degree, in company with other juveniles, and, giving appreciable weight to the findings of the trial court, find the corroborating evidence was sufficient to connect R. Y., Jr., with the commission of the offense.
*654 Subsequent to the preparation of this opinion and before completion of our conference on it, we have learned that yesterday the United States Supreme Court decided the two cases referred to in our opinion as pending before it [McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647], and has ruled that a state is not obligated, under the United States Constitution, to grant a jury trial in a juvenile delinquency proceeding.
Affirmed.
STRUTZ, C. J., and KNUDSON, J., concur.
ERICKSTAD, Judge (concurring specially).
A state through its constitution may guarantee rights to its citizens not provided for in the Constitution of the United States as long as those rights do not violate the United States Constitution. To understand that this is true, especially as it affects the right of a state to guarantee to a juvenile a jury trial in the adjudicative stage of a juvenile court proceeding, we need only listen to Justice Blackmun speaking for the majority of the United States Supreme Court in McKeiver v. Pennsylvania.
"If, in its wisdom, any State feels the jury trial is desirable in all cases, or in certain kinds, there appears to be no impediment to its installing a system embracing that feature. That, however, is the State's privilege and not its obligation." McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).
If a juvenile was entitled to a jury trial under our State Constitution as adopted in 1889, it would seem that he could not be deprived of that right by a statute subsequently enacted, no matter how innocuous sounding the title.
Section 7 of Article I of our State Constitution reads:
"Section 7. The right of trial by jury shall be secured to all, and remain inviolate; but a jury in civil cases, in courts not of record may consist of less than twelve men, as may be prescribed by law."
If the adjudicative stage of a juvenile court proceeding is criminal in nature, then Section 13 of Article I of our State Constitution also comes into play.
"Section 13. In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law."
Because of the importance of determining whether these provisions of our State Constitution apply, we must determine the nature of the proceeding in the instant case.
Here we look to the objectives of our Juvenile Court Act.
"27-20-01. Interpretation.This chapter shall be construed to effectuate the following public purposes:
"1. To provide for the care, protection, and wholesome moral, mental, and physical development of children coming within its provisions;
"2. Consistent with the protection of the public interest, to remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior and to substitute therefor a program of treatment, training and rehabilitation;
"3. To achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare *655 or in the interest of public safety;
"4. To provide a simple judicial procedure through which this chapter is executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced; and
"5. To provide simple interstate procedures which permit resort to co-operative measures among the juvenile courts of the several states when required to effectuate the purposes of this chapter."
From those purposes one could conclude that the Act is designed as a means of providing for the care, health, and happiness of children and not as a means of prosecuting children for acts of delinquency.
Its general objective, then, is apparently not the prosecution of criminals.
We should, however, look beyond the objectives of the Act to the other provisions of the Act and to its product. It would appear that the other provisions of the Act support the objectives. Since our State adopted the Uniform Juvenile Court Act as recently as 1969, it is too soon for us to judge the Act by its product.
At this point in time, then, we conclude that the Act is not a criminal prosecution within the meaning of Section 13 of Article I of our State Constitution.
The next question is whether the hearing provided for under the Act is a trial and thus governed by Section 7 of Article I of our State Constitution.
The juvenile here is charged with having committed robbery in the first degree, which offense if committed by an adult would constitute a felony.
One of the responsibilities of the Juvenile Court in this case was to determine whether the juvenile committed this offense. This phase of the Juvenile Court's work has been denominated the adjudicatory stage.
The Juvenile Court in determining this issue is doing no more and no less than a judge in a civil or criminal case when the judge is the trier of the facts and is doing no more and no less than a jury in a civil or criminal case when the jury is the trier of the facts.
It would seem, then, that the juvenile is on trial in the sense that the Juvenile Court in this stage of the proceedings is determining the facts. In the instant case, this duty necessitated a determination of the issue of whether the juvenile committed acts amounting to the crime of robbery in the first degree if committed by an adult. The logical conclusion must be that the juvenile was on trial.
Since we have heretofore determined that this is not a criminal proceeding, the final issue is whether the proceeding is a trial in equity or in law. As the majority opinion points out, Section 7 has been held not applicable to proceedings in equity. I would adhere to the decisions which so hold at this time.
It is my hope that the new Act can be administered in such a way through the support of the Legislature in its funding capacity that the rehabilitation goals may be achieved. Should time and experience prove to the contrary and the Act become merely a punitive tool, a jury trial might then be justified under our State Constitution.
For this reason, I concur only in the result of the majority opinion.
PAULSON, J., concurs.
STRUTZ, Chief Justice.
Although I signed the majority opinion, I concur in the concerns expressed in this concurring opinion.