The PEOPLE of the State of Colorado, Petitioner-Appellee,

In the Interest of T.M., Child-Appellant,

And Concerning I.P., Respondent.

No. 85SA444.

Supreme Court of Colorado, En Banc.

Sept. 14, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for petitioner-appellee.

David F. Vela, Public Defender, Diana M. Richett, Deputy Public Defender, Denver, for child-appellant and respondent.

ROVIRA, Justice.

T.M., a juvenile, appeals a delinquency adjudication of the Denver Juvenile Court contending that the court erred in denying her request for a jury trial. Specifically, she challenges the constitutionality of section 19-1-106(4)(a)(I), 8 C.R.S. (1978 & 1984 Supp.), which limits an alleged delinquent's right to a jury trial if "the petition alleges a delinquent act which would be a class 2 or class 3 misdemeanor, a petty offense or a violation of a municipal or county ordinance if committed by an adult and if a commitment to the department of institutions is not being sought." We hold that the statute is constitutional and accordingly affirm the judgment of the trial court.[1]

## I.

In 1984, T.M., a 13-year-old child, was charged in a delinquency petition in the Juvenile Court of the City and County of Denver with an act which would have constituted criminal mischief, a class 2 misdemeanor, § 18-4-501, 8 C.R.S. (1983 Supp.), if the child had been an adult. At the plea hearing, T.M. denied the allegation of the petition and requested a jury trial. The district attorney informed the court that the People would not be seeking commitment to the department of institutions and requested a trial to the court pursuant to section 19-1-106(4)(a)(I), 8 C.R.S. (1978 & 1984 Supp.).

T.M. claimed that section 19-1-106(4)(a)(I) was unconstitutional in that it denied her a right to a trial by jury pursuant to article II, section 23 of the Colorado Constitution; denied her due process and equal protection of law under the fourteenth amendment and article II, section 25 of the Colorado Constitution; and was unconstitutionally vague.

The juvenile court denied T.M.'s request for a jury trial, holding that the statute was not unconstitutional. After a trial to the court, T.M. was adjudicated delinquent. In its dispositional order, the court placed T.M. on probation with conditions, one of which included a 30-day sentence to the Gilliam Youth Center, with 10 days to be served subject to school release, and 20 days suspended on the condition that T.M. comply with the terms and conditions of probation. The sole issue which we are called upon to resolve is whether the statutory provision limiting the right of a juvenile to a jury trial is constitutional.

## II.

Prior to July 1, 1983, the Colorado Children's Code, § 19-1-106, 8 C.R.S. (1978), provided a statutory right to a jury trial in an adjudicatory hearing in a delinquency proceeding.[2] In 1983, however, the legislature amended the statute to eliminate the statutory right to a jury trial in delinquency cases involving lesser matters. Ch. 209, sec. 2, § 19-1-106, 1983 Colo.Sess.Laws 721. The statute as amended provides:

4)(a) A child, his parent or guardian, or any interested party may demand a trial by a jury of not more than six or the court on its own motion may order such a jury to try any case:

(I) In adjudicatory hearings under section 19-1-104(1)(a), (1)(b), or (1)(c), except when the petition alleges a delinquent act which would be a class 2 or class 3 misdemeanor, a petty offense, or a viola-

---

1. This appeal comes directly to this court because the constitutionality of a statute is in question. § 13-4-102(1)(b), 6 C.R.S. (1973).

2. Section 19-1-106, 8 C.R.S. (1978), provided:
   (4)(a) A child, his parent or guardian, or any interested party may demand a trial by a jury of not more than six or the court on its own motion may order such a jury to try any case:
   (I) In adjudicatory hearings under section 19-1-104(1)(a) [delinquent], (1)(b) [in need of supervision], or (1)(c) [neglected or dependent]....

tion of a municipal or county ordinance if committed by an adult and if a commitment to the department of institutions is not being sought....

Section 19-1-106, 8 C.R.S. (1978 & 1984 Supp.).[3]

On appeal, the essence of T.M.'s argument is that since juvenile delinquency proceedings are in the nature of a criminal prosecution, and a delinquent child is subject to dispositional alternatives which might result in a loss of liberty, a trial by jury is mandated by article II, section 23 of the Colorado Constitution. She also contends that depriving her of a trial by jury was fundamentally unfair, and thus a violation of her due process rights under the Colorado Constitution. Finally, T.M. claims that her right to equal protection under both the fourteenth amendment and article II, section 25 of the Colorado Constitution was violated because an adult charged with a class 2 or 3 misdemeanor is entitled to a trial by jury and because juveniles charged with more serious offenses but facing the same potential dispositional alternatives also may obtain jury trials. We disagree with these arguments.

## III.

■ Initially, we note that T.M. had no right to a jury trial in this delinquency proceeding under the due process clause of the federal constitution. In *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), the United States Supreme Court rejected that contention. T.M. does not dispute the holding of *McKeiver* but bases her argument instead on the due process and jury-trial guarantees contained in the Colorado Constitution. We decline to construe these provisions in a fashion inconsistent with the Supreme Court's interpretation of the federal constitution in the circumstances specified in section 19-1-106(4)(a)(I).

## A.

■ Article II, section 23 of the Colorado Constitution provides that "[t]he right of trial by jury shall remain inviolate in criminal cases...." T.M. argues that a delinquency proceeding is, in essence, a "criminal" case and therefore the jury trial guarantee should apply. We disagree.

T.M.'s argument fails to take into account the unique nature of delinquency proceedings. Although in some respects such proceedings are similar to criminal trials, the underlying theme of a delinquency proceeding is to provide guidance and rehabilitation for the child and protection for society rather than fixing criminal responsibility, guilt, and punishment. *S.A.S. v. District Court*, 623 P.2d 58, 60 (Colo. 1981). The Colorado Children's Code is explicitly designed "[t]o secure for each child subject to these provisions such care and guidance ... as will best serve his welfare and the interests of society." § 19-1-102(1)(a), 8B C.R.S. (1986). Consequently, the code strives to avoid unnecessarily stigmatizing a child by providing for "delinquency" adjudications, rather than "criminal" trials, §§ 19-1-103(9), -104(1)(a), 8B C.R.S. (1986), and unique protections are afforded to limit the effect of and publicity attending a delinquency proceeding. §§ 19-1-107(2), -109, -111, 8B C.R.S. (1986). In an effort to improve the prospects for rehabilitation of the child, the code envisions a more informal, simple, and speedy judicial procedure. *J.T. v. O'Rourke*, 651 P.2d 407, 412 n. 5 (Colo. 1982); § 19-1-107(2), 8B C.R.S. (1986). The state's role in the proceeding is not regarded as that of a prosecutor, but that of *parens patriae* to protect the welfare of the child. *S.A.S.*, 623 P.2d at 60; § 19-1-106(3), 8B C.R.S. (1986).

Because of their unique nature, delinquency proceedings have been frequently described as civil in nature, *S.A.S.*, 623 P.2d at 60; *People in the Interest of*

3. In 1985, section 19-1-106(4)(a)(I) was again amended to delete the phrase "if a commitment to the department of institutions is not being sought" and replaced with the phrase "prior to the adjudicatory hearing the district attorney has waived the right to seek commitment to the department of institutions or to seek a sentence to the county jail of six months or longer." Ch. 160, sec. 6, § 19-1-106, 1985 Colo.Sess.Laws 690, 692.

*R.A.D.*, 196 Colo. 430, 433, 586 P.2d 46, 47–48 (1978). Many constitutional protections for the criminally accused were once thought to be inapplicable to alleged juvenile offenders. *See In re Gault*, 387 U.S. 1, 14, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967). However, in a series of decisions beginning with *Gault*, the United States Supreme Court has held that notwithstanding the "civil" nature of juvenile proceedings, due process of law mandates that certain protections available to adult criminal defendants must also be made available to alleged juvenile offenders. Our cases have followed this approach. *E.g., P.V. v. District Court*, 199 Colo. 357, 609 P.2d 110 (1980); *R.A.D.*, 196 Colo. 430, 586 P.2d 46; *People in the Interest of C.B.*, 196 Colo. 362, 585 P.2d 281 (1978).

Nevertheless, the United States Supreme Court has continually been careful to limit its decisions by noting that: "We do not mean ... to indicate that the [delinquency] hearing ... must conform with all of the requirements of a criminal trial or even of the usual administrative hearing...." *Gault*, 387 U.S. at 30, 87 S.Ct. at 1445; *see also McKeiver*, 403 U.S. at 533–34, 91 S.Ct. at 1980. Furthermore, although the Court has criticized the labeling of juvenile proceedings as "civil," it has refused to hold that a delinquency adjudication is a "criminal" proceeding for purposes of the sixth amendment right to jury trial. *McKeiver*, 403 U.S. at 540–41, 91 S.Ct. at 1984. In this regard, it stated:

> Little, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either "civil" or "criminal." The Court carefully has avoided this wooden approach.

*McKeiver*, 403 U.S. at 541, 91 S.Ct. at 1984. Instead, the Court has taken a case-by-case approach analyzing the nature of rights asserted by juveniles under due process standards, giving appropriate weight to the state's interest in "informality, flexibility, or speed" in juvenile proceedings. *McKeiver*, 403 U.S. at 534, 541, 91 S.Ct. at 1981, 1984.

Again, our cases have followed that approach. In *P.V.*, 609 P.2d at 110, for in-

stance, we held that due process mandated that the constitutional right to a speedy trial be applied to juvenile proceedings as well as adult cases although we could have grounded our decision on the proposition that a delinquency proceeding was a "criminal" case for purposes of the sixth amendment of the United States Constitution or article II, section 16 of the Colorado Constitution. Instead of taking this "simplistic" approach, however, we analyzed the juvenile's claim in light of due process standards and the unique nature of the juvenile system.

We believe a similar approach is applicable here. As we see it, the applicable constitutional provision is the due process clause of the Colorado Constitution and not article II, section 23. We turn, therefore, to T.M.'s second argument.

### B.

■ The pertinent due process standard enunciated by the United States Supreme Court is fundamental fairness, *Gault*, 387 U.S. at 30, 87 S.Ct. at 1445; *McKeiver*, 403 U.S. at 543, 91 S.Ct. at 1985, and we have adopted and applied that standard in our own cases. *L.O.W. v. District Court*, 623 P.2d 1253, 1256 (Colo.1981); *P.V.*, 609 P.2d at 111; *R.A.D.*, 196 Colo. at 433, 586 P.2d at 48; *C.B.*, 196 Colo. at 366, 585 P.2d at 284.

Under this standard, the United States Supreme Court has held that juveniles are entitled to the right of written notice, the right to counsel, the privilege against self-incrimination, and the right of confrontation and cross-examination of witnesses in delinquency adjudications, *Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; that the criminal standard of proof beyond a reasonable doubt is applicable to delinquency adjudications, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); and that double jeopardy protections apply to juvenile adjudicatory proceedings, *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

Applying the same standard, we have held that fundamental fairness requires that statutory and constitutional speedy tri-

al protections be made applicable to juvenile, as well as adult, proceedings, *P.V.*, 609 P.2d at 111; that the standard of proof beyond a reasonable doubt that governs certain adult probation revocation proceedings should also govern comparable juvenile probation revocation proceedings, *C.B.*, 196 Colo. at 364, 585 P.2d at 282; and that the rule authorizing an adult defendant in a criminal case to challenge for cause a prospective juror employed by a law enforcement agency be made equally applicable to juvenile delinquency proceedings, *R.A.D.*, 196 Colo. at 433, 586 P.2d at 48.

These cases represent an attempt to accommodate the goals and philosophies of the juvenile system within the due process framework of fundamental fairness. *L.O.W.*, 623 P.2d at 1257. Read together, they seek to "insure that the juvenile court will operate in an atmosphere which is orderly enough to impress the juvenile with the gravity of the situation and the impartiality of the tribunal and at the same time informal enough to permit the benefits of the juvenile system to operate." *McKeiver*, 403 U.S. at 539, 91 S.Ct. at 1983 (quoting *In re Terry*, 438 Pa. 339, 347, 265 A.2d 350, 354 (1970)). In each case, the rights of the juvenile were considered in light of principles of fairness and the ability of the juvenile court to function in a unique manner. *L.O.W.*, 623 P.2d at 1257.

■ We have not heretofore decided whether the due process clause of the Colorado Constitution mandates that the right to jury trial apply to juvenile delinquency adjudications. *See S.A.S.*, 623 P.2d at 61 n. 1. In *McKeiver*, however, the United States Supreme Court rejected a similar contention under the federal constitution's due process clause, and we now elect to follow that case insofar as necessary for the resolution of this case. We therefore hold that the due process standard of fundamental fairness does not constitutionally mandate a jury trial in the less serious delinquency adjudications specified in section 19–1–106(4)(a)(I).

In *McKeiver*, the Supreme Court took note of the "high hopes and aspirations of ... supporters of the juvenile court con-

cept." 403 U.S. at 534, 91 S.Ct. at 1981. Conceding that there had been "disappointments [in] the system's performance and experience," the Court nevertheless held that its decisions should not be construed to "spell the doom of the juvenile court system or even deprive it of its 'informality, flexibility or speed.'" 403 U.S. at 534, 91 S.Ct. at 1981.

Ultimately, it concluded that "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." 403 U.S. at 545, 91 S.Ct. at 1986. Its primary rationale was that: "The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner." 403 U.S. at 547, 91 S.Ct. at 1987. The Court noted there was nothing per se unfair about a trial to the court:

[O]ne cannot say that in our legal system the jury is a necessary component of accurate fact-finding. There is much to be said for it, to be sure, but we have been content to pursue other ways for determining facts. Juries are not required, and have not been, for example, in equity cases, in workmen's compensation, in probate, or in deportation cases. Neither have they been generally used in military trials. In *Duncan* [*v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968),] the Court stated, "We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury."

*McKeiver*, 403 U.S. at 543, 91 S.Ct. at 1985.

At the same time the Court noted the significant impact that jury trials would have on the juvenile court system:

There is a possibility, at least, that the jury trial, if required as a matter of constitutional precept, will remake the juvenile proceeding into a fully adversary process and will put an effective end to what has been the idealistic prospect of an intimate, informal protective

proceeding.... If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial.

*McKeiver*, 403 U.S. at 545, 550, 91 S.Ct. at 1986, 1988.

Moreover, the Court noted that jury trials would not remedy what experts have regarded as the "defects" in the juvenile court system—which relate to the lack of resources and of dedication rather than to inherent unfairness. 403 U.S. at 547–48, 91 S.Ct. at 1987. Despite defects in the juve-

nile court system, the Court noted that experts who have studied it and criticized it recommend its retention and do not recommend mandatory jury trials. 403 U.S. at 545–46, 91 S.Ct. at 1986.

Lastly, the Court noted that 34 states and the District of Columbia deny juveniles the right of jury trials in cases such as these. 403 U.S. at 548–49, 91 S.Ct. at 1987–88. This widespread view suggested that the practice should not be construed as offending "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 403 U.S. at 548, 91 S.Ct. at 1987.[4]

The Court also stated:

4. The vast majority of courts addressing this issue have rejected claims of constitutional entitlement to jury trials in juvenile proceedings, including, in many instances, claims based on state constitutional provisions. *United States v. Bent,* 702 F.2d 210 (11th Cir.1983); *United States v. Duboise,* 604 F.2d 648 (10th Cir.1979); *United States v. Hill,* 538 F.2d 1072 (4th Cir.1976); *United States v. Cuomo,* 525 F.2d 1285 (5th Cir. 1976); *United States v. Torres,* 500 F.2d 944 (2d Cir.1974); *United States v. King,* 482 F.2d 454 (6th Cir.), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1973); *United States v. James,* 464 F.2d 1228 (9th Cir.), *cert. denied,* 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 675 (1972); *Cotton v. United States,* 446 F.2d 107 (8th Cir. 1971); *Flippo v. State,* 49 Ala.App. 138, 269 So.2d 155, *cert. denied,* 289 Ala. 743, 269 So.2d 164 (1972); *In re T.R.S.,* 1 Cal.App.3d 178, 81 Cal.Rptr. 574 (1969) (state constitution's jury-trial guarantee inapplicable; federal due process and equal protection claims rejected); *In the Matter of J.T.,* 290 A.2d 821 (D.C.App.), *cert. denied,* 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252 (1972); *In the Interest of V.D.,* 245 So.2d 273 (Fla.App.), *cert. denied,* 249 So.2d 688 (Fla. 1971); *Robinson v. State,* 227 Ga. 140, 179 S.E.2d 248 (1971) (no violation of sixth amendment or state constitution's jury-trial guarantee); *In re Fucini,* 44 Ill.2d 305, 255 N.E.2d 380 (1970), *appeal dismissed,* 403 U.S. 925, 91 S.Ct. 2242, 29 L.Ed.2d 704 (1971) (no violation of sixth and fourteenth amendments of federal constitution or state constitution's jury-trial guarantee); *Bible v. State,* 253 Ind. 373, 254 N.E.2d 319 (1970) (no violation of federal constitution or state constitution's jury-trial guarantee); *In Interest of Johnson,* 257 N.W.2d 47 (Iowa 1977) (no violation of state constitution's jury-trial guarantees); *Dryden v. Commonwealth,* 435 S.W.2d 457 (Ky.1968); *State in Interest of Dino,* 359 So.2d 586 (La.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978) (no violation of state constitution's due process clause); *State v. Gleason,* 404 A.2d 573 (Me.1979) (no violation of state constitution's

due process clause); *In re Johnson,* 254 Md. 517, 255 A.2d 419 (1969) (no violation of sixth and fourteenth amendment of federal constitution or state constitution's jury-trial guarantees); *In the Interest of Hopkins,* 227 So.2d 282 (Miss. 1969); *In re Fisher,* 468 S.W.2d 198 (Mo.1971) (no violation of federal constitutional provisions and state constitution's jury-trial guarantee); *In re Geiger,* 184 Neb. 581, 169 N.W.2d 431 (1969); *In re State in Interest of J.W.,* 57 N.J. 144, 270 A.2d 273 (1970); *In re D,* 27 N.Y.2d 90, 313 N.Y.S.2d 704, 261 N.E.2d 627 (1970), *appeal dismissed, cert. denied,* 403 U.S. 926, 91 S.Ct. 2244, 29 L.Ed.2d 705 (1971); *In re Agler,* 19 Ohio St.2d 70, 249 N.E.2d 808 (1969) (no violation of federal constitutional provisions or state constitution's jury-trial guarantees); *In re Burrus,* 275 N.C. 517, 169 S.E.2d 879 (1969), *aff'd sub nom. McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (no violation of federal constitution or state constitution's jury-trial guarantee); *In the Matter of R.Y.,* 189 N.W.2d 644 (N.D.1971) (no violation of sixth amendment of federal constitution or state constitution's jury-trial guarantee); *In the Matter of Turner,* 253 Or. 235, 453 P.2d 910 (1969) (no violation of federal constitutional provisions and state constitution's jury-trial guarantee); *In re Terry,* 438 Pa. 339, 265 A.2d 350 (1970), *aff'd sub nom. McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *In re McCloud,* 110 R.I. 431, 293 A.2d 512 (1972) (no violation of fourteenth amendment of federal constitution and state constitution's jury-trial and due process clauses); *State v. Lawley,* 91 Wash.2d 654, 591 P.2d 772 (1979) (no violation of sixth and fourteenth amendments and state constitution's jury-trial guarantee); *In Interest of N.E.,* 122 Wis.2d 198, 361 N.W.2d 693 (1985) (no violation of federal constitution and state constitution's jury-trial and due process clauses).

Reaching a contrary result are: *Nieves v. United States,* 280 F.Supp. 994 (S.D.N.Y.1968); *R.L.R. v. State,* 487 P.2d 27 (Alaska 1971); *Pey-*

911

The juvenile concept held high promise. We are reluctant to say that, despite disappointments of grave dimensions, it still does not hold promise, and we are particularly reluctant to say ... that the system cannot accomplish its rehabilitative goals.... We are reluctant to disallow the States to experiment further and seek in new and different ways the elusive answers to the problems of the young, and we feel that we would be impeding that experimentation by imposing the jury trial....

*McKeiver*, 403 U.S. at 547, 91 S.Ct. at 1987.

We find the reasoning of the Court in *McKeiver* persuasive with respect to the lesser offenses specified in section 19–1–106(4)(a)(I). Although the legislature has chosen in the past to afford jury trials to all juveniles in delinquency adjudications, we regard it as constitutionally free to experiment with a more informal system with respect to lesser offenses. The "grave" disappointments of the system cited by the Supreme Court counsel us to limit our decision to the validity of the statute now before us. But we also believe the system retains promise and see nothing fundamentally unfair in trials to the court in the delinquency adjudications specified in section 19–1–106(4)(a)(I).[5]

### IV.

■ We also reject T.M.'s equal protection argument. Since a jury trial is not a fundamental right to juveniles in the delinquency proceedings specified in section 19–1–106(4)(a)(I), the test to be applied to determine whether equal protection standards have been violated is whether the

*ton v. Nord*, 78 N.M. 717, 437 P.2d 716 (1968); *Arwood v. State*, 62 Tenn.App. 453, 463 S.W.2d 943 (1970). Three of these cases preceded *McKeiver*.

5. Our decision today is not inconsistent with our decision in *R.A.D.*, 196 Colo. 430, 586 P.2d 46. There we held that the rule permitting an adult defendant to challenge for cause a potential juror employed by a public law enforcement agency is also applicable to juvenile delinquency proceedings. In the course of our opinion, we stated that: "Fundamental fairness mandates that the charges against a juvenile be evaluated by a fair and impartial jury." *R.A.D.*, 196 Colo.

classification is reasonable and bears a rational relationship to legitimate state objectives. *E.g., J.T. v. O'Rourke*, 651 P.2d 407, 413 (Colo.1982); *see also United States ex rel. Buonoraba v. Commissioner of Correction*, 316 F.Supp. 556 (S.D.N.Y.1970); *People v. Cruz*, 129 Misc.2d 235, 492 N.Y. S.2d 872 (N.Y.City Crim.Ct.1985); *Findlay v. City of Tulsa*, 561 P.2d 980 (Okl.Crim. App.1977); *State ex rel. O'Brien v. Towne*, 64 Wash.2d 581, 392 P.2d 818 (1964) (applying a rational basis test to equal protection claims based on a denial of jury trials).

■ In light of the comprehensive system established by the legislature for the rehabilitation of juvenile offenders, we think there is a rational basis for the legislature to deny the juveniles specified in section 19–1–106(4)(a)(I) a jury trial although adults charged with violating the same laws could obtain jury trials. As we stated in *J.T.*, 651 P.2d at 412 n. 5:

The juvenile system is premised on the concept that a more informal, simple, and speedy judicial setting will best serve the needs and welfare of juvenile defendants.... A separate juvenile system was formed to delay placement of juveniles into the formal machinery of the criminal system. Informal and personal attention may also serve better to rehabilitate and deter children than the adult system. (Citations omitted.)

*See also In re T.R.S.*, 1 Cal.App.3d 178, 81 Cal.Rptr. 574 (1969); *DeBacker v. Sigler*, 185 Neb. 352, 175 N.W.2d 912 (1970), *appeal dismissed*, 403 U.S. 926, 91 S.Ct. 2258, 29 L.Ed.2d 706 (1971); *In re State in Interest of J.W.*, 108 N.J.Super. 540, 262 A.2d 9, *aff'd*, 57 N.J. 144, 270 A.2d 273 (1970)

at 433, 586 P.2d at 48. However, we do not read *R.A.D.* so broadly as to imply that fundamental fairness mandates a right to jury trial in every delinquency proceeding; the case merely holds that if a jury trial is provided, it is indispensable that the jury be *impartial.* In *S.A.S.*, 623 P.2d at 61 n. 1, we recognized that the statement quoted from *R.A.D.* was dicta, noting that "[t]he issue whether the state constitution requires as a matter of due process that the juvenile be accorded the right to a jury trial in the adjudicatory phase of the delinquency proceeding was not before the court in *R.A.D.* ..."

(rejecting similar equal protection arguments raised by juveniles denied jury trials). As the Supreme Court has put it, "[T]he constitution does not mandate elimination of all differences in the treatment of juveniles." *Schall v. Martin,* 467 U.S. 253, 263, 104 S.Ct. 2403, 2409, 81 L.Ed.2d 207 (1984). "[O]ur acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults." *Bellotti v. Baird,* 443 U.S. 622, 635, 99 S.Ct. 3035, 3044, 61 L.Ed.2d 797 (1979).

We also think the legislature could rationally deny jury trials to juveniles accused of less serious offenses where "commitment ... is not being sought" while providing juries to other juveniles—even though both classes of juveniles face the same potential dispositional alternatives. In *J.T.,* 651 P.2d at 413, we upheld against an equal protection challenge the denial of preliminary hearings to non-detained juveniles accused of less serious offenses even though juveniles accused of more serious offenses were entitled to preliminary hearings. We there noted that a juvenile accused of a more serious offense in a delinquency petition is more likely to incur the stricter potential dispositional alternatives available in delinquency cases—*i.e.,* commitment to the department of institutions. *J.T.,* 651 P.2d at 413; § 19-3-114, 8B C.R.S. (1986). We also stated:

> Distinguishing juveniles charged with lesser crimes is rational because it furthers the valid governmental purposes of simplicity in juvenile procedure ... and maintaining a separate juvenile system.... In addition, it is rational to provide a less formal and adversarial setting for certain classes of juvenile suspects, recognizing that the goal of the juvenile system is to provide juveniles "the care and guidance ... that will best serve [their] welfare and the interests of society."

*J.T.,* 651 P.2d at 413 (citations omitted). We believe a similar rationale is applicable here.

Accordingly, the judgment of the Denver Juvenile Court is affirmed.